George F. Jordan, Conservator, Appellee, *vs.* W. A. Kirkpatrick, Appellant.

*Opinion filed June 20, 1911—Rehearing denied October 11, 1911.*

1. Insane persons—*contract by insane person before inquest found is only voidable.* A deed or contract made by an insane person before inquest found is not void but voidable, and if the contract or deed is obtained in good faith and without notice of the insanity, and the insane person has received the benefit of the consideration, a court of equity will require the consideration to be refunded before setting aside the deed or contract.

2. Same—*when note and mortgage of insane person will be set aside without refunding consideration.* A note and mortgage made by an insane woman before inquest found will be set aside at the suit of her conservator without requiring re-payment of the money to the lender, even though the latter acted in good faith and without notice of the insanity, where he dealt entirely with the woman's husband and delivered the check drawn in her favor to the husband, who obtained the money and absconded, abandoning the wife, who received no benefit whatever from the loan.

APPEAL, from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

F. Y. HAMILTON, and JOHN E. POLLOCK, for appellant:

Where a person apparently of sound mind, and not known by the other party to be otherwise, enters into a contract which is fair and *bona fide* and which is executed and completed, and the property which is the subject matter of the contract cannot be restored so as to put the parties *in statu quo,* such contract cannot be set aside either by the alleged lunatic or those who represent him. *Scanlan* v. *Cobb,* 85 Ill. 296.

A deed by one for whom a conservator is subsequently appointed should not be set aside without requiring restoration of the money paid by the grantee and the return of the property or its equivalent, which he conveyed to a third party, at the instance of the grantor, in part consideration for his deed, where the grantee had no knowledge or notice of the grantor's infirmity or of any undue influence by the party to whom the grantee made his conveyance. *Eldredge* v. *Palmer,* 185 Ill. 618; *Ronan* v. *Bluhm,* 173 id. 287; *Hardy* v. *Dyas,* 203 id. 211.

LIVINGSTON & BACH, for appellee:

The note and mortgage of a person *non compos mentis* should be set aside, on application of the conservator of such person, even where there has been no adjudication of insanity, and even where the person procuring said note and mortgage had no knowledge of the condition of such person when the note and mortgage were given, and even where no fraud was practiced by the person procuring it, where it appears that the lunatic did not receive any benefit from the money derived from such note and mortgage. *Hill* v. *Fowler,* 231 Ill. 205; *Burnham* v. *Kidwell,* 113 id.

425; *Jeneson* v. *Jeneson,* 66 id. 264; *Hosler* v. *Beard,* 35
L. R. A. 161; *Insurance Co.* v. *Blankenship,* 94 Ind. 535;
*Hall* v. *Louth,* 109 id. 315; *Curtis* v. *Brownell,* 42 Mich.
165; *Dickerson* v. *Davis,* 111 Ind. 433; *Chew* v. *Bank,*
14 Md. 319; *VanPetten* v. *Beals,* 46 Iowa, 62; *Davis* v.
*Tarver,* 65 Ala. 98; *Mitchell* v. *Kingman,* 5 Pick. 431;
*Hovey* v. *Hobson,* 53 Me. 451.

The protection of persons who are so unfortunate as to
be bereft of reason and incapable of managing their own
estate is of higher obligation and an object more to be
cherished by the courts than is the protection of holders of
commercial paper, however innocent they may be. *Dick-
erson* v. *Davis,* 111 Ind. 433.

The lunatic must actually have received the benefit of
the money before he will be compelled to place the other
party *in statuo quo. Insurance Co.* v. *Blankenship,* 94
Ind. 535.

Mr. JUSTICE FARMER delivered the opinion of the court:

George F. Jordan, conservator of Minnie E. Arnold,
filed his bill in the circuit court of McLean county to cancel
a note for $1000 signed by Minnie E. Arnold and her hus-
band, dated October 1, 1906, payable to W. A. Kirkpatrick
one year after date, and also to cancel a real estate mort-
gage signed by said Minnie E. Arnold and her husband to
secure the payment of said note. The bill alleged that Min-
nie E. Arnold was a distracted person and incapable of exe-
cuting the note and mortgage. It was also alleged that the
said Minnie E. Arnold received no consideration for the
execution of the note and mortgage and that none of the
money represented by said note and mortgage was ever paid
to her or to any person for or in her behalf, and that im-
mediately after the execution of said note and mortgage the
husband appropriated the money and deserted her and left
her destitute. The bill alleged that Kirkpatrick knew, or

could have known by the use of reasonable care and caution, that Minnie E. Arnold was not of sound mind and memory and was incapable of understandingly making the note and mortgage. Kirkpatrick answered, denying that Minnie E. Arnold was a distracted person or that she received none of the money represented by the note and mortgage, and averred that he gave a check for the money, payable to the order of Minnie E. Arnold, and that said check was endorsed by her and the money used for board and other expenses. The answer avers that Albert N. Arnold, the husband of Minnie E. Arnold, acted as her agent in procuring the loan, and that Minnie E. Arnold knew and understood what she was doing when she executed the note and mortgage. Subsequently Kirkpatrick filed a bill to foreclose the mortgage. After answer filed by the conservator of Minnie E. Arnold, in which her insanity and incapacity were alleged, the two cases were consolidated and were referred to the master in chancery to take the testimony and report his conclusions of law and fact. The master found from the proof that at the time Minnie E. Arnold executed the note and mortgage she was insane, and that she had been in that condition for four months prior to that time. He further found that Kirkpatrick had no knowledge of her mental condition, and that nothing occurred to cause suspicion in the mind of the notary public who took the acknowledgment to the mortgage, or the agent through whom Kirkpatrick made the loan to Minnie E. Arnold, as to her mental condition, and that the business was conducted without legal negligence or fraud on the part of Kirkpatrick. The master further reported that the evidence showed Minnie E. Arnold received no benefit from the transaction and that the proceeds of the note and mortgage were received and appropriated by her husband, who abandoned her immediately after receiving it. Under this state of proof the master reported his view of the law to be that the note and the mortgage should be canceled and

set aside without the payment to Kirkpatrick of anything and that the bill to foreclose the mortgage should be dismissed for want of equity. Objections to the report filed with the master by Kirkpatrick were overruled and were renewed as exceptions before the chancellor, who overruled them and entered a decree approving the master's report and in accordance with its findings and recommendation. From that decree Kirkpatrick prosecuted an appeal to the Appellate Court for the Third District. That court affirmed the decree, granted a certificate of importance, and Kirkpatrick has prosecuted a further appeal to this court.

There is no substantial controversy as to the facts. It is conceded by appellant that Minnie E. Arnold was insane at the time the note and mortgage were signed by her, on October 1, 1906. Appellee was appointed conservator of Minnie E. Arnold on the 12th day of November, 1906. Previous to that time there had been no inquisition and finding that she was a lunatic or insane. The note and mortgage were given for money loaned by the appellant through an agent by the name of O'Connor. Neither appellant nor O'Connor had any knowledge at the time of the transaction that Minnie E. Arnold was a distracted person. The question of law involved is whether, under those circumstances, the note and mortgage should be set aside without placing the parties *in statu quo.*

A deed or contract made by an idiot or lunatic before inquest found is not void, but voidable. There is apparently confusion in the authorities as to the terms and conditions upon which a court of equity will, at the suit of a lunatic, set aside a conveyance obtained in good faith before an inquisition and finding of lunacy. In most of the cases we have examined where this question has been before the courts, the grantor has received the benefit and advantage of the consideration paid for the conveyance. Under such circumstances a majority of the cases require that the consideration paid for the conveyance must·be re-

turned to the grantee as a condition upon which it will be set aside. (*Eldredge* v. *Palmer,* 185 Ill. 618; *Scanlan* v. *Cobb,* 85 id. 296.) We have been referred to no case requiring the parties to be restored to their *status quo* where the grantor had not received the money for the conveyance or any benefit or advantage therefrom. It must be admitted this case is one of peculiar hardship. Neither appellant nor Mrs. Arnold has been guilty of any actual wrong or fraud, and yet one of them must be made to suffer a substantial loss. While there are intimations in some cases, including *Scanlan* v. *Cobb, supra,* that the rule requiring parties to be placed *in statu quo* should be confined to cases where the lunatic grantor received the benefit of the consideration paid, yet we have been unable to find any case where it has been so expressly decided. In *Cribben* v. *Maxwell,* 34 Kan. 8, (55 Am. Rep. 233,) it was said: "We think, however, the weight of authority favors the rule that where the purchase of real estate from an insane person is made and the deed of conveyance is obtained in perfect good faith before an inquisition and finding of lunacy, for a sufficient consideration, without knowledge of the lunacy, and no advantage is taken by the purchaser, *the consideration received by the lunatic must be returned,* or offered to be returned, before the conveyance can be set aside at the suit of the alleged lunatic or one who represents him." Neither the appellant nor O'Connor saw or talked with Mrs. Arnold about making the loan or giving the note and mortgage. They dealt entirely with her husband, and the check for $1000, less $35 commissions and expenses of abstracts, was made payable to Minnie E. Arnold but was delivered to her husband. While this is not unusual and is perhaps a general practice in transactions of that kind, it was within appellant's power to have seen Mrs. Arnold and ascertained her mental condition before making the loan. Mrs. Arnold knew nothing whatever of what was going on and was powerless to do anything to prevent it

or to give any warning to appellant. A lady notary who took Mrs. Arnold's acknowledgment to the mortgage testified she told her what the instrument was but did not read it to her; that Mrs. Arnold signed the note and mortgage and the witness did not observe anything wrong with her mental condition. The proof shows she was just out of the hospital and both her mental and physical condition were very bad. She was unable to wash, dress or feed herself.

The reason given in the cases for requiring the consideration to be returned where the lunatic has received the benefit of it is, that to refuse to do so would be allowing the lunacy to be the means of perpetrating a fraud. Where the benefit of the consideration is not received by the lunatic the reason upon which the rule is based does not exist, and in view of the difference in circumstances and opportunities of the parties it would seem in harmony with sound principles of justice that the lunatic, having no responsibility for the transaction and receiving no benefit therefrom, should receive the protection of the court of equity and the loss should be made to fall on the party dealing with the lunatic. We agree with the Supreme Court of Indiana that "the protection of persons who are so unfortunate as to be bereft of reason and incapable of managing their own estates is of higher obligation and an object more to be cherished by the courts than is the protection of holders of commercial paper, however innocent they may be." *Dickerson* v. *Davis,* 111 Ind. 433; 12 N. E. Rep. 145.

In our opinion, under the evidence in this case, the law justified the decree, and the judgment of the Appellate Court is affirmed.

                                        *Judgment affirmed.*