JEANNETTE WILLIAMS *et al.* Appellees, *vs.* JOHN H. WILLIAMS *et al.*—(MAGGIE A. CASSEM, Exrx., Appellant.)

*Opinion filed October 16, 1914.*

1. RES JUDICATA—*in equity, former recovery must be pleaded to entitle record of former case to admission.* In equity the record of a former adjudication cannot be introduced in evidence by the defendant unless the former adjudication has been set up or relied upon by answer or plea, if an opportunity for doing so has been afforded the defendant.

2. SAME—*burden of establishing an estoppel is on him who invokes it.* The burden of establishing an estoppel is upon him who invokes it, and where a judgment in a former proceeding is relied upon, it must appear that the court had jurisdiction to, and did, adjudicate the precise question claimed to be settled.

3. SAME—*what recital in decree does not show jurisdiction of person.* Jurisdiction of the person of a defendant is not shown by a recital in the decree that he answered the bill, where the record shows he was insane before his appearance was entered and an answer filed by an attorney, who entered the appearance at the request of the insane defendant's wife and who does not appear from the record to have been appointed guardian *ad litem.*

4. INSANE PERSONS—*when conveyance will be set aside without requiring return of consideration.* Where an insane grantor does not receive the consideration paid nor any benefit therefrom the conveyance will be set aside in equity without any return or offer to return the consideration, even though the grantee may not have known the grantor was insane.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

C. E. BOTSFORD, and FRANK A. McCARTHY, for appellant.

CHARLES C. SPENCER, and JESSE WILCOX, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellees filed their bill in the circuit court of Cook county for the partition of a lot therein described, in the city of Chicago, referred to in the briefs as the Yale avenue property. The bill alleges that the three complainants and two defendants are the only surviving children of John Q. Williams, who died intestate October 31, 1903, owning in fee simple the lands sought to be partitioned. In addition to the five children he left surviving him his widow, Eliza J. Williams. The bill alleges that on or about August 22, 1900, Williams became totally insane and continued in that condition until his death, and that while so insane he and his wife, on or about September 4, 1900, executed and delivered a trust deed, which was duly recorded, purporting to convey the premises sought to be partitioned to George P. Bay, as trustee, to secure a note for $3000, payable three years after date, with interest at five and one-half per cent per annum. The bill alleges, on information and belief, the note has been fully paid and canceled, but if unpaid the holder or owner is unknown to complainants. The bill further alleges that on the 26th of October, 1900, while said Williams was insane, he conveyed to his wife, Eliza J. Williams, the premises described in the bill, but that the deed was made without any consideration therefor, and because of the insanity of the grantor was, and is, void and voidable. It is further alleged that on or about March 20, 1901, said Eliza J. Williams and John Q. Williams, while the latter was insane, conveyed the property by quit-claim deed

265 – 5

to Randall Cassem, but that said deed was without consideration, and that at the time of its execution and delivery said Cassem knew Williams was demented and insane; that upon receipt of the deed said Cassem took possession of the property and has since continued in possession, receiving the issues and profits thereof, until his death, November 14, 1909; that said Cassem died testate and by his will devised all his real estate to Maggie A. Cassem, who was appointed sole executrix of the will; that said will has been duly probated and said Maggie A. Cassem now claims to own said premises as devisee of Randall Cassem, and since his death has received the rents and profits therefrom. The bill further alleges that on August 22, 1901, Williams was adjudged insane by the county court of Cook county, and by the judgment of that court it was declared he had been insane for a period of one year prior to the entry of the judgment. The bill prays that the trust deed to George Bay, trustee, the warranty deed from Williams to his wife, Eliza J. Williams, and the quit-claim deed from Eliza J. Williams and John Q. Williams to Randall Cassem, be declared null and void and removed as clouds upon the title of said children of said John Q. Williams, and that the premises be partitioned among them according to their respective rights and interests, and that Maggie A. Cassem be required to account to them for the rents and profits therefrom.

All the defendants to the bill were defaulted except Maggie A. Cassem, who answered, individually and as executrix of the will of Randall Cassem, deceased. Her answer denied that John Q. Williams was at the time of his death the owner of the premises and that his children inherited the same from him; denied Williams became insane August 22, 1900, to such an extent as to be incapable of understanding and transacting business, and alleged that from said date until his death Williams was of sound and disposing mind and memory, engaged in ordinary business affairs, negotiating loans and buying real estate, and was

regarded by those with whom he dealt as an ordinarily careful and prudent business man. The answer admitted the making of the trust deed to Bay, and averred the notes it was given to secure were assumed by Cassem as part of the consideration for the conveyance from the Williams to him and that he afterwards paid off the notes. The answer denied the conveyance from Williams to his wife, October 26, 1900, was without consideration or that the deed was void, and averred that at the time the deed was made to Cassem Eliza J. Williams owned the land in fee and had full power and authority to convey the same. The answer averred that said Williams was, at the time he and his wife made the deed to Cassem, of sound mind and memory, and that at the time of the conveyance Cassem had no notice or knowledge of any claim that Williams was insane. The answer further denied that the conveyance was made without consideration, and averred Cassem paid a valuable consideration for the conveyance and in addition assumed and agreed to pay the notes secured by the trust deed on the premises, and that he did thereafter pay and discharge the same. The answer admitted Cassem was in possession of the premises until his death, and that since that time Maggie A. Cassem, his sole devisee, has been in possession thereof.

Complainants' proof was to the effect that John Q. Williams was of unsound mind as far back as 1899; that he never recovered, and died in the Northern Illinois Hospital for the Insane at Elgin, Illinois, where he was committed by the order and judgment of the county court of Cook county August 22, 1901.

Defendant Maggie A. Cassem offered in evidence the files of case No. 215,253 in the superior court of Cook county, entitled, *Robert Williams* v. *John Q. Williams et al.* That was a bill for partition and was filed June 29, 1901. Originally John Q. Williams owned the property sought to be partitioned in this case in severalty. It is referred to in the briefs as the Yale avenue property. He also owned an

undivided one-sixth interest in three other lots located at different places in the city of Chicago. On the 26th of October, 1900, he executed a warranty deed to his wife, Eliza J. Williams, for the Yale avenue property, and on the 20th of March, 1901, he and his wife united in a quit-claim deed conveying the Yale avenue property and Williams' interest in the other property to Randall Cassem. On June 29, 1901, Robert Williams filed a bill to partition the property other than the Yale avenue property. Said complainant was a brother of John Q. Williams. The bill alleged that the complainant and John Q. Williams each became seized of the undivided one-sixth of the premises described in the bill by conveyance from one Hugh Williams; that John Q. Williams, after becoming so seized of said one-sixth, together with his wife, executed a trust deed on his interest in two of the lots described in the bill to secure an amount of money unknown to complainant. The bill further alleged that John Q. Williams and his wife, Eliza, had made a deed of his undivided interest in the premises to Randall Cassem, but that they claimed said conveyance was not their deed and was not intended to convey said real estate. After setting out the interest claimed by the parties in the premises, the bill alleged John Q. Williams' undivided one-sixth was subject to whatever rights existed by virtue of the trust deed and the conveyance to Randall Cassem. Subsequently an amendment was filed alleging that since the filing of the bill John Q. Williams had been declared insane by the county court of Cook county and that a guardian *ad litem* should be appointed for him. The record shows the appearance of John Q. and Eliza J. Williams was entered by their solicitor, S. A. French. An answer to the bill was filed by French, as guardian *ad litem* for John Q. Williams. The answer alleges respondent is insane and now an inmate of the Northern Hospital for the Insane at Elgin, Illinois, and further alleges that the deed from respondent and wife to Cassem, dated March 20, 1901, was

made without any consideration and was procured by Cassem by fraud and deceit at a time when respondent was mentally incompetent, and that said deed ought to be set aside. The answer prays the same relief as though a cross-bill had been filed. Eliza J. Williams answered the bill, alleging she and her husband were fraudulently induced to execute and deliver the deed to Randall Cassem; that it was procured by him by fraud and deceit, without consideration, and should be declared void and of no effect as against her and John Q. Williams. Randall Cassem and Adelia Cassem (presumably the same person as Maggie A. Cassem) were, among others, made defendants to the bill and jointly answered the same, claiming to own the one-sixth interest in certain premises described in the bill by virtue of a conveyance from John Q. Williams by deed dated March 20, 1901, and other instruments not of record. The answer denies that said deed was not the deed of John Q. Williams and his wife, and denies the allegation of the bill that it was not intended to convey their interest in the real estate to Randall Cassem. As to the other allegations in the bill the answer asks that strict proof be required.

While the Williams' conveyed to Cassem by the same deed the Yale avenue property and the other property referred to in the partition suit in the superior court, the validity of the deed as a conveyance of the Yale avenue property was not raised, for the reason that suit related only to the partition of the lots in which John Q. Williams had owned a one-sixth interest and which he and his wife purported to convey to Cassem by the same deed by which they conveyed the Yale avenue property to the same grantee.

The cause was referred to the master in chancery, who took the testimony and reported the same, together with his conclusions thereon, to the court. The master found that Eliza J. Williams and John Q. Williams did not, at the time they made the deed to Cassem, understand they were conveying to him their undivided interest in the property; that

they did not expect or intend to make a conveyance thereof and that it was improperly inserted in the deed as part of the property intended to be conveyed. The master further found, from the evidence, that John Q. Williams was not, on March 20, 1901, in such mental condition as to be able to make a distinct and definite agreement in regard to the sale of his undivided interest in said property. Exceptions to the master's report were sustained by the chancellor and a decree entered finding the deed of March 20, 1901, was a good and valid conveyance of the undivided interest of John Q. Williams in the property sought to be partitioned in that case, and that by virtue of said deed Randall Cassem was seized of and entitled to a one-sixth interest in said premises as tenant in common with the owners thereof. No appeal was prosecuted from that decree.

The bill for partition by Robert Williams in the superior court case contains no allegation that John Q. Williams was not of sound mind when he joined with his wife in the deed to Cassem. The allegation was that the grantors in that deed claimed it was not their deed and was not intended to convey their interest in the real estate sought to be partitioned. The answer of French, as guardian *ad litem* of John Q. Williams, alleged he was mentally incompetent to make the deed, and this is the only place in the pleadings in that case where the mental condition of Williams was mentioned. The proof taken by the master and embraced in his report to the chancellor shows that evidence was heard upon the question of Williams' mental condition at the time the deed was made.

The evidence in the case at bar was heard in open court by the chancellor and a decree entered as prayed in the bill. The decree found that the notes and the trust deed given to Bay by John Q. Williams to secure the notes were void and the trust deed was not a lien upon the premises; that Williams received no consideration for the notes nor any advantage from the payment of them by Randall Cassem,

by whom the evidence shows they were paid. The decree finds that the deed from Williams to his wife, October 26, 1900, was invalid because he was insane at the time it was made, and that the deed from Williams and wife to Randall Cassem, March 20, 1901, was without consideration; that Williams was insane at the time it was made and that Cassem knew he was insane. The decree further finds that the proceedings and decree in the superior court case did not determine or adjudicate any of the issues in this cause, and that said decree is not *res judicata* of any issue in this case and creates no estoppel against complainants. The decree further finds that the superior court never acquired jurisdiction of the person of John Q. Williams in the case in that court, and that the decree was not binding on him on the issues involved in that proceeding.

Although the authorities are not harmonious on the question, their weight seems to be that when a former case between the same parties is relied upon as *res judicata,* it must, at least in equity, be pleaded when an opportunity to plead it has been afforded defendant. *Gray* v. *Gillilan,* 15 Ill. 453, relied on by appellant, was an action of assumpsit, in which there was a special plea of former recovery. A replication to that plea alleged the repliant offered no proof in the former proceeding, and on demurrer the replication was held good. The record in the former case was received in evidence. The court reviews many authorities, English and American, comments on the conflict between them, and says the general rule is that a former recovery will only operate as a bar when specially pleaded. While it does not appear to have been necessary to a decision of that case, the court, in the course of its discussion, says, substantially, that the record in a former proceeding may be received in evidence under the general issue and when so received is conclusive. *Sheldon* v. *Patterson,* 55 Ill. 507, was a bill to foreclose a mortgage, and defendant offered in evidence the record of a judgment in a former proceeding without hav-

ing specially pleaded it. The judgment in the proceeding, the record of which was offered in evidence, was not rendered until after the pleadings were closed in the case in which it was offered. The trial court disregarded the former record, and this court held that was erroneous. The court quoted the rule announced in *Duchess of Kingston's case,* 20 How. St. Tr. 538, that the judgment of a court of concurrent jurisdiction directly upon the point is, as a plea, a bar, or, as evidence, conclusive between the same parties upon the same matter directly in question in another court, but said many courts had recognized a modification of that rule, viz., that if a party have an opportunity to set up a judgment by pleading it but does not do so, then it is evidence but not conclusive. This court did not agree to this modification, and expressed the view that the weight of authority in this country is in favor of the proposition that when a former recovery is given in evidence its effect is the same as if it had been specially pleaded.

The foregoing cases are the decisions in this State relied upon by appellant. To our minds they are not conclusive, for in neither of them was the question whether the record of a former recovery may be received in evidence in actions in equity without specially pleading it when an opportunity has been afforded to do so, involved and necessary to a decision. The suit of *Gray* v. *Gillilan, supra,* was an action at law, and a former adjudication was specially pleaded. *Sheldon* v. *Patterson, supra,* was a suit in equity, and the former recovery relied upon by the defendant in that case was had after the pleadings were closed. In *Wann* v. *McNulty,* 2 Gilm. 355, it was held a former verdict and judgment may be given in evidence in an action at law under the general issue, but in such case it is only *prima facie* evidence and not conclusive, while if specially pleaded it would be a complete bar. In *Hahn* v. *Ritter,* 12 Ill. 80, the action was in tort, and the court held a former recovery must be specially pleaded and could not be given in evidence under

the general issue. In *Gerber* v. *Gerber,* 155 Ill. 219, *Evans*
v. *Woodsworth,* 213 id. 404, and *Mettler* v. *Warner,* 243
id. 600,—all suits in equity,—it was held that if the record
of a former suit is relied upon it must be specially pleaded.
In *Consolidated Coal Co.* v. *Peers,* 166 Ill. 361, which was
an action in assumpsit, plaintiffs recovered in the trial court
and defendants appealed. It was claimed by plaintiffs in
their briefs in this court that the question at issue had been
adjudicated in former litigation between the same parties
and was *res judicata.* The court said the question of a
former recovery was not raised by the declaration or by any
replication and could not be considered. In *Turley* v. *Tur-
ley,* 85 Tenn. 251, (opinion by Lurton, J.,) and *Lyon* v.
*Talmadge,* 14 Johns. 501,—both suits in equity,—it was
held a former decree, to be availed of as a defense, must be
specially set up and relied upon by plea or answer. Other
authorities might be cited to the same effect, and a con-
siderable number of other cases decided by courts of the
highest respectability will be found holding the record of a
former recovery may be given in evidence without being
specially pleaded. This court appears to have adopted and
applied the rule, in equity at least, as late as 1910, (*Mettler*
v. *Warner, supra,*) that a former adjudication, to be availed
of as a defense, must be set up and relied upon in the an-
swer or by plea. This rule was not applied in *Sheldon* v.
*Patterson, supra,* but in that case the suit had been com-
menced and the pleadings closed before the former judg-
ment relied on was rendered.

In conformity with what we understand is the rule
adopted by this court and the courts of last resort in some
other States, we are disposed to hold the record of the su-
perior court case offered in evidence by appellant, not hav-
ing been set up or relied upon in the answer or by plea, was
inadmissible as evidence. Disregarding that record, then
there is no proof to rebut the testimony of appellees in sup-
port of the allegations of the bill. But if, as contended by

appellant, the record in the former proceeding was admissible without being set up and relied upon by plea or answer, still we think the chancellor was warranted in his refusal to give the record in the superior court case any consideration in this case. The burden of establishing an estoppel is upon him who invokes it, and where a judgment in a former proceeding is relied upon it must appear the court had jurisdiction to, and did, adjudicate the precise question. *Sawyer* v. *Nelson,* 160 Ill. 629; *Geary* v. *Bangs,* 138 id. 77; 24 Am. & Eng. Ency. of Law, 773.

The proof abundantly shows that John Q. Williams was of unsound mind as far back as 1899. A former employer of said Williams, who had known him more than twenty years and in whose employ he had been for many years prior to June, 1900, testified Williams' mental condition became unsound in 1899; that no reliance could be placed upon him though he had previously been a very capable and reliable man. From June, 1899, to June, 1900, Williams' employer carried him on the pay-roll but he was unable to perform any service, because, as the employer testified, "He was crazy,—that was all." He testified Williams' mind began to fail in 1898. The salary for Williams was paid by his employer to Williams' wife and children. His mental condition was apparent to anyone who saw or talked with him. That Williams was of unsound mental condition from as early as 1899 was testified to by witnesses who were brought into association with him and by competent physicians who had treated him. On the 22d of August, 1901, Williams was adjudged insane by the county court of Cook county and committed to the hospital for the insane at Elgin, Illinois, where he died October 31, 1903. The verdict and judgment recited that his age was forty-seven years and that his disease was of one year's duration.

The bill in the superior court case was filed June 29, 1901. After Williams was adjudged insane the bill was amended to show that fact and the prayer was amended

by asking that a guardian *ad litem* be appointed for him. There was no summons in the record and files of the case offered in evidence and no recital in the decree that any summons was ever issued for or served upon Williams. The record shows the appearances of Eliza J. and John Q. Williams were entered by S. A. French, their solicitor. French was called as a witness in this case, and testified he entered the appearance of John Q. Williams at the request of Eliza J. Williams, and that he had no recollection that he ever saw Williams. He transacted the entire business with Eliza J. Williams. He did not remember whether he was ever appointed guardian *ad litem* for Williams. Eliza J. Williams was not the mother of John Q. Williams' children. She was a second wife, who had been his housekeeper and whom he married in 1899, about two years after the death of his first wife. The record does not show the appointment of anyone as guardian *ad litem*. The decree recites the cause came on to be heard upon the bill, the answer of John Q. Williams, the default of the other defendants whose appearances had been entered, and the report of the master to whom the cause had been referred. The decree does not expressly find the court had jurisdiction of the person of John Q. Williams but recites he had answered the bill. At the time his answer to the bill was filed by French, Williams had been adjudged insane, and the proof shows he had been in that condition for a long time previously. The proof in this record shows he was insane long before his appearance was entered by French. After an amendment to the bill in the superior court case was filed setting up that since the bill was filed Williams had been adjudged insane, so far as the record shows there was no guardian *ad litem* appointed for him. The decree does not show Williams' appearance was entered before answer filed, but the only recital in it to show jurisdiction of his person is that he had answered the bill. The answer alleged he was insane and had been committed to an asylum. The

court could not acquire jurisdiction of his person by an attorney entering his appearance or filing an answer for him. (*United Workmen* v. *Zuhlke,* 129 Ill. 298; *Dickison* v. *Dickison,* 124 id. 483; *Greenman* v. *Harvey,* 53 id. 386.) In our opinion the record overcomes any presumption from the recital in the decree that the court had jurisdiction of the person of John Q. Williams. *Clark* v. *Thompson,* 47 Ill. 25.

Appellant contends that as part of the consideration for the conveyance to Cassem he paid off notes secured by the trust deed to Bay aggregating $3000, and that in any event it was erroneous to set aside the conveyance without any return, or offer to return, of the consideration paid for the conveyance. The decree finds, from the evidence, that long prior to August 22, 1900, John Q. Williams was so insane as to be incapable of understanding the nature of any business he might engage in, and that this condition continued until his death; that the trust deed, and the notes secured by it, were invalid and did not constitute any lien upon the premises, and that Williams received no consideration for their execution nor any advantage from their payment by Cassem. The decree further finds that October 26, 1900, (the date Williams made the deed to his wife,) he was insane and that the conveyance was made without consideration; also that March 20, 1901, (the date the deed was made by Williams and wife to Cassem,) Williams was insane and was known to be so by Cassem, and that there was no consideration for the conveyance. The evidence upon which these findings were made is uncontradicted, if we disregard, as we think must be done, the record in the superior court case.

While the rule that a contract will not be rescinded unless the party in whose favor the rescission is awarded return what he has received under the contract is, in general, applicable only to persons *compos mentis,* (*Ronan* v. *Bluhm,* 173 Ill. 277,) it will also be applied to a case where the

grantee in good faith, before the grantor has been adjudged insane and without any knowledge of his insanity, purchases land and pays the grantor the consideration therefor. But the rule is otherwise if the insane grantor receives no benefit from the consideration paid. In such case the conveyance will be set aside without requiring the return, or offer to return, of the consideration, although the grantee did not know the grantor was insane when the deed was made. This question was before this court in *Jordan* v. *Kirkpatrick,* 251 Ill. 116, where the court said: "The reason given in the cases for requiring the consideration to be returned where the lunatic has received the benefit of it is, that to refuse to do so would be allowing the lunacy to be the means of perpetrating a fraud. Where the benefit of the consideration is not received by the lunatic the reason upon which the rule is based does not exist, and in view of the difference in circumstances and opportunities of the parties it would seem in harmony with sound principles of justice that the lunatic, having no responsibility for the transaction and receiving no benefit therefrom, should receive the protection of the court of equity and the loss should be made to fall on the party dealing with the lunatic." The same rule is applied where the grantee has notice of the grantor's insanity and the consideration paid is wasted and lost by him, or where the consideration paid is so inadequate as to evince an intention of the grantee to take advantage of the grantor's infirmity to cheat and defraud him. *Hardy* v. *Dyas,* 203 Ill. 211; *Amos* v. *American Trust and Savings Bank,* 221 id. 100; *Clay* v. *Hammond,* 199 id. 370.

The decree of the circuit court is affirmed.

*Decree affirmed.*