# Illinois Official Reports

## Appellate Court

*Epstein v. Bochko*, 2017 IL App (1st) 160641

| | |
|---|---|
| Appellate Court Caption | DAVID A. EPSTEIN, Cook County Public Administrator, for the Estate of Anna Polchanin, Deceased, Petitioner-Appellant, v. IRENE BOCHKO, KATERYNA SZCZUDLO, STEPHEN A. KUBIATOWSKI, and SELFRELIANCE UKRAINIAN AMERICAN FEDERAL CREDIT UNION, Respondents (Selfreliance Ukrainian American Federal Credit Union, Respondent-Appellee). |
| District & No. | First District, Fourth Division<br>Docket No. 1-16-0641 |
| Filed | May 11, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-P-3154; the Hon. Mary Ellen Coughlan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Leinenweber, Baroni & Daffada LLC, of Chicago (Justin L. Leinenweber, Thomas More Leinenweber, and James V. Daffada, of counsel), for appellant.<br><br>Oleksiuk & Associates, P.C., of Chicago (Dmytro Kurywczak, of counsel), for appellee. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices McBride and Howse concurred in the judgment and opinion. |

**OPINION**

¶ 1   Irene Bochko (Bochko) and Kateryna Shchudlo[1] were employed as caregivers for an elderly woman, Anna Polachanin (Anna). In April 2008, Shchudlo and Bochko obtained power of attorney for property and health care for Anna. Shortly after obtaining power of attorney, Shchudlo took Anna to Selfreliance Ukrainian American Federal Credit Union (respondent or Selfreliance) and opened a joint bank account, with Anna as the primary account holder. Over the next few months, Shchudlo and Bochko deposited much of Anna's life savings into this joint account from her other bank accounts. Shchudlo then wired the money from the joint account at Selfreliance to bank accounts in Ukraine. In October 2008, a licensed psychiatrist evaluated Anna and concluded that she had dementia and that her dementia had been present for several years. The public guardian petitioned the Cook County circuit court for a citation to recover assets from Bochko, Shchudlo, respondent, and others. Shortly thereafter, Anna died, and the Cook County public administrator (petitioner) was appointed to supervise her estate and continued to pursue the petition. Respondent moved for summary judgment, and after a hearing, the court granted that motion finding that there was no evidence respondent knew or should have known of Anna's mental incapacity at the time she opened the joint bank account. We find the circuit court properly granted respondent's motion for summary judgment where there were no issues of material fact and respondent was not liable for the fraudulently converted funds.

¶ 2                              I. BACKGROUND

¶ 3   According to petitioner's amended petition, Anna, a 95-year-old woman, lived alone until 2008 when she required live-in care while she recovered from surgery. A handyman who worked in Anna's building, Volodymyr Bochko (Volodymyr) told Anna that his daughter, Bochko, would be willing to work as a caregiver for her. Shortly thereafter, Shchudlo began working with Bochko as Anna's caregiver. In April 2008, Bochko and Shchudlo took Anna to attorney Stephen Kubiatowski's office to prepare and execute a power of attorney for Anna.

¶ 4   On May 31, 2008, Shchudlo took Anna to Selfreliance to open a joint bank account. As identification to open the account, Shchudlo presented an expired foreign passport. Valentina Sidelnik, the manager at Selfreliance, testified that she did not require further identification from Shchudlo because she already had an account with Selfreliance. Sidelnik further testified that neither Anna nor Shchudlo presented her with the power of attorney form because it was not necessary to open the account. Sidelnik testified that Anna was present, she asked to have the account opened, and she signed her own name on the account agreement. Sidelnik also noted that Anna walked into Selfreliance without assistance and spoke Ukrainian. Sidelnik testified that Anna told her that she wanted to open an account with Selfreliance because it was a Ukrainian institution. The joint account was opened with a check for more than $50,000 from Anna's account at Hoyne Savings Bank. Sidelnik testified that this was not an unusual amount to be deposited into a new account.

¶ 5   Between May and June 2008, more than $300,000 was transferred or deposited into the joint account at Selfreliance from Anna's accounts at other financial institutions. In July 2008, Bochko and Shchudlo began to wire money from the joint account at Selfreliance to accounts

_____

[1]Shchudlo is occasionally identified in the record as Kateryna Szczudlo or Lateryna Szczudlo.

in Ukraine. Between July and October 2008, more than $250,000 was transferred from the joint account at Selfreliance to bank accounts in Ukraine.

¶ 6    Dr. Geoffrey Shaw, a licensed psychiatrist, evaluated Anna on October 30, 2008. After meeting with her, Dr. Shaw concluded that Anna was disabled by dementia and later opined that her dementia had been present for at least several years. Dr. Shaw testified that when Anna went to Selfreliance on May 31, 2008, she was suffering from dementia, but he could not offer an opinion regarding how she presented herself to respondent's employees on that date. Based on Dr. Shaw's report, the circuit court declared Anna a disabled person and appointed the public guardian as plenary guardian of Anna's estate and person.[2]

¶ 7    On February 19, 2010, the public guardian filed an amended petition for a citation to recover assets from Bochko, Volodymyr, Shchudlo, Kubiatowski, and Selfreliance. Counts V and VI of the eight-count petition were directed at Selfreliance. In count V, the public guardian alleged that respondent breached a duty of care owed to Anna. The allegation stated that "Banks, Savings and Loans, and Credit Unions generally owe their customers a duty of ordinary care to maintain and guard a customer's accounts, and protect the account holder from fraud, abuse and waste." In count VI, the public guardian alleged that the account agreement between Anna and Selfreliance was "a nullity" because Anna was incapable of entering into contracts at the time she signed the account agreement with Selfreliance on May 31, 2008. The public guardian requested that the court rescind the May 31, 2008, account agreement and order Selfreliance to reconvey all of the funds from the fraudulent wire transfers. Anna died on May 7, 2011, and the court appointed the Cook County public administrator as the supervised administrator of her estate.

¶ 8    On September 25, 2015, respondent filed a motion for summary judgment on counts V and VI of the amended petition. Respondent contended that it did not owe a duty of ordinary care to maintain and guard a customer's accounts and protect the account holder from fraud, abuse, and waste. Respondent further contended that there was no evidence suggesting that it knew or should have known that Anna was disabled when she came to Selfreliance to open the joint account. In regard to count V, the circuit court found that neither the Uniform Commercial Code nor any Illinois authority imposed a tort duty of ordinary care between a depositor and a bank, except with regard to negotiable instruments. The court determined that since wire transfers are not negotiable instruments, Selfreliance did not breach any duty owed to Anna.

¶ 9    With regard to count VI, seeking rescission of the May 31, 2008, account agreement, the court found that there were no material facts to establish that Selfreliance either knew or should have known of Anna's condition at the time she opened the joint account. The court noted that the only facts presented concerning Anna's mental condition on the date the account was opened were contained in Sidelnik's deposition testimony because Dr. Shaw testified that he could not offer an opinion regarding how Anna appeared on that date. Accordingly, the court found that there was no genuine issue of material fact and that respondent was entitled to judgment as a matter of law on counts V and VI. Petitioner now solely appeals the court's dismissal of count VI.

---

[2]Bochko was convicted of elder abuse and financial exploitation and was incarcerated. Shchudlo fled the country.

¶ 10                                    III. ANALYSIS

¶ 11        On appeal, petitioner contends that the circuit court erred in granting respondent's motion for summary judgment where there was a question of material fact as to whether Anna was mentally competent at the time she opened the joint account and it was irrelevant whether respondent knew or should have known about her incompetency. Petitioner asserts that because Anna lacked the capacity to enter into an account agreement with Selfreliance, the contract should be rescinded and Selfreliance should reimburse her for the loss of her life savings.

¶ 12        Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file, when viewed in a light most favorable to the nonmoving party, reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *General Casualty Insurance Co. v. Lacey,* 199 Ill. 2d 281, 284 (2002). "A genuine issue of material fact precluding summary judgment exists where the material facts are disputed, or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Adames v. Sheahan*, 233 Ill. 2d 276, 296 (2009) (citing *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004)). We review *de novo* the circuit court's entry of summary judgment. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998).

¶ 13                            A. No Genuine Issue of Material Fact

¶ 14        Petitioner first contends that the medical records and deposition testimony created a question of fact regarding whether Anna was mentally competent when she opened the joint account with Selfreliance. In so contending, petitioner relies on the medical opinion of Dr. Shaw, who examined Anna in October 2008, five months after she opened the joint account at Selfreliance. Dr. Shaw testified that, in his opinion, Anna suffered from dementia and had severe problems with memory recall. In his report, Dr. Shaw noted that Anna could not recall the day of the week and had a limited understanding of finances. On November 9, 2008, Dr. Shaw issued an addendum to his report, in which he stated that he believed Anna's dementia had been present for at least several years. In his deposition testimony, however, Dr. Shaw stated that he could not offer an opinion regarding how Anna presented herself on May 31, 2008, when she went to Selfreliance to open the joint account.

¶ 15        We observe that, despite contending that there was a genuine issue of material fact regarding Anna's competency at the time she opened the joint account, petitioner also asserts in its brief that "the *undisputed evidence* in this case established that [Anna] was not competent to enter into a contract with respondent to open a joint bank account on May 31, 2008." (Emphasis added.) In fact, respondent acknowledges that it does not dispute Anna's incapacity at the time she opened the joint account and did not contest her competency in its motion for summary judgment. Rather, respondent asserts that its ignorance of her condition, as well as the fact that the credit union did not improperly convert her funds or otherwise defraud her, absolves it of any liability.

¶ 16        Nonetheless, petitioner asserts that because the evidence of Anna's competency was not disputed, the court could properly void the joint account agreement and require Selfreliance to return the improperly converted funds to Anna. As the trial court recognized, the only facts presented regarding Anna's competency on the day she opened the joint account came from Sidelnik, who testified that Anna did most of talking, signed her own name, and walked

- 4 -

without assistance. Petitioner contends that Dr. Shaw's report contradicts Sidelnik's testimony, but Dr. Shaw stated in his testimony that he could not offer an opinion regarding how Anna presented herself at Selfreliance on May 31, 2008. The only person other than Sidelnik who could offer testimony regarding Anna's condition on that date is Shchudlo, who has left the country.[3]

¶ 17    Thus, it is clear from Sidelnik's testimony that Selfreliance had no knowledge of Anna's incompetency when she signed the account agreement. Contrary to petitioner's contentions, the trial court did not "entirely ignore[ ]" Dr. Shaw's testimony regarding Anna's competency, but observed, correctly, that he did not observe her on the date she went to Selfreliance to open the joint account and could not offer an opinion regarding how she presented herself on that date. Thus, Dr. Shaw could not offer testimony regarding what respondent knew or should have known regarding Anna's mental condition.

¶ 18    As our supreme court has recognized "[a] contract made with a lunatic in good faith, without any advantage taken of his position, and for his own benefit, is valid both in equity and at law, and where a conveyance or contract is made in ignorance of the insanity, with no advantage taken and in perfect good faith, a court of equity will not set it aside if the parties cannot be restored to their original position." *Walton v. Malcolm*, 264 Ill. 389, 396 (1914). Here, it is clear from the evidence presented that Selfreliance entered into the contract in good faith, without taking advantage of its position and in ignorance of Anna's mental incapacity. Selfreliance was entitled to rely upon the legal presumption that every person is sane until the contrary is proven. See, *e.g.*, *In re Estate of Elias*, 408 Ill. App. 3d 301, 316 (2011).

¶ 19    Accordingly, we find that the circuit court correctly found that there was no question of material fact regarding Anna's competency on the date she opened the account at Selfreliance. In addition, we find that the circuit court correctly held that the account agreement should not be rescinded where there was no evidence in the record to show that respondent knew or should have known of Anna's incompetency.

¶ 20                    B. Respondent's Knowledge of Anna's Competency Not Irrelevant

¶ 21    Petitioner next contends, however, that respondent's knowledge of Anna's competency is irrelevant. Petitioner asserts that even though respondent lacked knowledge of Anna's incapacity, the loss of her life savings should fall on respondent because precedent dictates that Anna, who was incapable of entering into the contract, should be protected. In so contending, petitioner relies on two cases: *Jordan v. Kirkpatrick*, 251 Ill. 116 (1911), and *In re Estate of Trahey*, 25 Ill. App. 3d 727 (1975).

¶ 22    In *Jordan*, a woman and her husband executed a $1000 note and mortgage payable to W.A. Kirkpatrick. *Jordan*, 251 Ill. at 118-19. George Jordan, the conservator of the wife, filed an action to cancel the note and mortgage alleging that the wife was a "distracted person and incapable of executing the note and mortgage." *Id.* at 118. The trial court found that the wife

---

[3]At the hearing, petitioner suggested that it could offer the testimony of Bochko, who would testify that Anna regularly used a walker or a wheelchair to get around, to rebut Sidelnik's testimony that Anna walked into the bank unassisted. As the trial court recognized, however, the testimony of Bochko, a convicted felon, that Anna regularly used a walker or wheelchair would do nothing to establish Anna's lack of mental capacity on the date she opened the joint account at Selfreliance, particularly where Bochko was not present at Selfreliance on the date in question.

was "insane" at the time the note and mortgage were signed. *Id.* at 119. The trial court thus ordered that the note and mortgage should be cancelled and set aside even though the court noted that Kirkpatrick, the mortgagee, had no knowledge of the wife's mental condition at the time. *Id.* at 119-20. The supreme court affirmed the trial court's holding, finding that:

> "The reason given in the cases for requiring the consideration to be returned where the lunatic has received the benefit of it is, that to refuse to do so would be allowing the lunacy to be the means of perpetrating a fraud. Where the benefit of the consideration is not received by the lunatic the reason upon which the rule is based does not exist, and in view of the difference in circumstances and opportunities of the parties it would seem in harmony with sound principles of justice that the lunatic, having no responsibility for the transaction and receiving no benefit therefrom, should receive the protection of the court of equity and the loss should be made to fall on the party dealing with the lunatic." *Id.* at 122.

The supreme court later distilled its holding in *Jordan*, noting that a contract may be rescinded in cases where "the insane grantor receives no benefit from the consideration paid." *Williams v. Williams*, 265 Ill. 64, 77 (1914). The court noted that "[i]n such case the conveyance will be set aside without requiring the return, or offer to return, of the consideration, although the grantee did not know the grantor was insane when the deed was made." *Id.*

¶ 23     In *Jordan*, at contrast with this case, Kirkpatrick, the lender, was seeking the benefit of the bargain he made with a person later found to be mentally incompetent. Here, respondent made no such claim against Anna and is not seeking to recover anything from her. Moreover, in *Jordan* the supreme court noted that Kirkpatrick did not meet with the wife before making the transaction where "it was within [Kirkpatrick's] power to have seen [the wife] and ascertained her mental condition before making the loan." *Jordan*, 251 Ill. at 121. The court observed that the evidence showed that the wife had just been released from the hospital and that both her mental and physical conditions were "very bad." *Id.* at 122.

¶ 24     Here, in contrast, Anna went to respondent's offices and met with respondent's personnel. Sidelnik testified that Anna walked without assistance, did most of the talking while opening the account, and signed her own name to the account agreement. Petitioner presented nothing to rebut this evidence except Dr. Shaw's testimony that Anna had suffered from dementia for several years, but Dr. Shaw could not offer an opinion regarding how she presented herself at Selfreliance on the date she opened the account. Accordingly, the case before us is thus unlike *Jordan* where Selfreliance is not seeking to recover anything from Anna and bank personnel dealt with her directly when opening the account.

¶ 25     We likewise find petitioner's reliance on *Trahey* misplaced. In *Trahey*, Margaret Fitzpatrick, a relative of Josephine Trahey, took her to a bank to open a joint account in their names using funds from Trahey's previous bank account. *Trahey*, 25 Ill. App. 3d at 729. Trahey was subsequently adjudicated incompetent, and a citation was directed to Fitzpatrick to appear before the court for information about and discovery of personal property belonging to Trahey's estate. *Id.* Fitzpatrick appeared before the court and turned over the joint account passbook. *Id.* at 729-30. Thereafter, the court granted the conservator's petition to redeposit the funds from the joint account back into Trahey's original account. *Id.* at 729. Nearly a year later, Fitzpatrick filed a motion asking that the order redepositing the funds be vacated. *Id.* at 730. The trial court found that Trahey was incompetent at the time she opened the account with Fitzpatrick and declined to vacate the original order. *Id.*

¶ 26        On appeal, this court observed that the fact that Fitzpatrick "quickly surrendered" the joint account passbook and never consulted a lawyer to defend her right could have led the trial court to conclude that she had waived her interest in the account. *Id.* at 731. The court further found that Fitzpatrick was in "no position to protest" because she did not appeal from the final order transferring the funds from the joint account to Trahey's original account. *Id.*

¶ 27        Initially, we observe that *Trahey* involved procedural issues not present in this case. Moreover, and more importantly, Fitzpatrick, the joint tenant who improperly opened a joint bank account with a mentally incompetent person, was found to be at fault for opening a joint account with a mentally disabled person, not the bank. Nowhere in the court's opinion is it implied that the bank where the joint account was opened would have been liable for any fraudulently converted funds as petitioner seems to suggest. Thus, consistent with *Trahey*, as the trial court recognized in its order, any loss should be made to fall upon those who defrauded Anna and not on Selfreliance.

¶ 28        Accordingly, we find no support for petitioner's contention that respondent's knowledge of Anna's incompetency is irrelevant. Furthermore, we find no support for petitioner's contention that Selfreliance should return the wrongfully converted funds. Rather, the weight of the authority suggests that Shchudlo and Bochko, the parties who fraudulently converted the funds, are liable for the amounts fraudulently transferred. We thus find that the circuit court properly granted respondent's motion for summary judgment where petitioner failed to show that there was a genuine issue of material fact as to Anna's incompetency and that respondent either knew or should have known of her incompetency.

¶ 29        III. CONCLUSION

¶ 30        For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 31        Affirmed.