## EDWARDS v. MILLER, Adm'r.

No. 13231—Opinion Filed Sept. 9, 1924.

(Syllabus.)

**1. Insane Persons—Incapacity to Contract —Scope of Evidence.**

Where the question of insanity of a person executing a deed, contract, or will arises, it is permissible to receive such evidence as to the condition of that person's mind both before and after the time of executing such deed, contract, or will as reasonably tends to show the mental condition of the person at the time in question. In determining such mental condition great latitude is allowed in the admission of evidence of his conversations, acts, and declarations inconsistent with his sanity.

**2. Same—Equity—Cancellation—Rights of Party Ignorant of Insanity.**

Where a conveyance or contract is made in ignorance of the insanity, with no advantage taken, and with perfect good faith, a court of equity will not set it aside, if the parties cannot be restored to their original position, and injustice would be done. Pomeroy's Equity Jurisprudence, vol. 2, page 465.

**3. Same.**

A contract, made by a person with one who is non compos mentis, but who is not entirely without understanding and who has not previously been adjudged incompetent, and whose appearance and conduct in his actions in relation to entering into the execution of such contract are such as to cause such person so entering into the contract with him to believe him to be fully competent, is not void, but only voidable when such party so contracting with such incompetent has in all respects acted in good faith and exercised that degree of skill, care, and caution which a reasonably prudent person would exercise under the circumstances. In such case the incompetent person ordinarily can rescind such contract only by placing such party in statu quo.

**4. Contracts—Rescission—"Placing Party in Statu Quo."**

To place a party in statu quo, as a condition precedent to the rescission of a contract, means to place such party in the same position in which he was situated at the time of the execution of the contract. To do so it is generally required that there be

paid to such party all moneys necessarily, properly, and judiciously expended by such party in good faith in discharging the duties apparently imposed upon him by such contract, but it is not required that there be paid to such party the expenses incurred by him in obtaining such contract or preliminary thereto.

Error from District Court, Tulsa County; Albert C. Hunt, Judge.

Action by James L. Miller, administrator of the estate of E. C. Colvin, deceased, against O. W. Edwards et al. Judgment against defendant named, and he brings error. Affirmed.

Kleinschmidt & Johnson, for plaintiff in error.

Hulette F. Aby, Wm. F. Tucker, and Wm. H. Martin, for defendant in error.

LYDICK, J. In the month of August, 1917, E. J. Colvin entered into written contracts with O. W. Edwards et al., by the terms of which the latter agreed to locate, plat, and investigate certain Indian lands which were being offered for sale by the United States government, and to make certain reports thereon calculated to be useful to Colvin in considering and determining the advisability of purchasing same. For such services to be rendered, Colvin paid to Edwards the sum of $2,160. About 60 days later E. J. Colvin, acting through H. E. Colvin as his next friend, brought this suit in the district court of Tulsa county against O. W. Edwards et al., and alleged that E. J. Colvin was then insane, and that he was insane and incompetent at the time he entered into these written contracts, and prayed their rescission and the recovery of the $2,160 paid thereunder less $500 they admitted to have been returned by Edwards. For answer Edwards et al. denied the insanity, and further pleaded that if E. J. Colvin was insane at the time the contracts were made, the defendants had no knowledge thereof, and that he was not entirely devoid of understanding, and that they entered into the contracts in good faith, believing E. J. Colvin to be sane, and that in good faith, and after the execution of these contracts and before notice of the alleged insanity, they had expended $800 in carrying into effect the obligations imposed upon them by the terms of these contracts. They prayed that if it be found that E. J. Colvin was insane at the time of the execution of the contracts, the court place the parties in statu quo, which they alleged would require a credit to be made upon the sum received by the defendants in the amount of such expense paid. On January 10, 1921, E. J. Colvin died, and the case was thereafter revived in the name of James L. Miller as administrator of his estate. In June, 1921, the case was tried to the court without a jury. Judgment was rendered in favor of plaintiff against O. W. Edwards alone in the sum prayed for in plaintiff's petition. Edwards, as plaintiff in error, brings the case here on appeal by petition in error with case-made attached.

In the trial of the case a physician, as witness for the plaintiff, testified that E. J. Colvin for years had been affected with paresis, a disease which seriously impaired his mind and rendered him incompetent at times to transact business intelligently. The court permitted witnesses to relate conduct of the alleged incompetent covering a period of three years preceding the transactions involved, and after the transactions down to the time of his death three years later. Plaintiff in error complains and says the court committed reversible error in permitting evidence of conduct so remote to the time when the contracts were made. No authorities are cited to support this contention. We have examined the following cases which strongly argue for the competency of this evidence: Queenan v. Terr. of Okla., 11 Okla. 261, 71 Pac. 218; Lane v. Moore, 151 Mass. 87, 21 Am. St. Rep. 430; Rice v. Rice, 127 Pa. St. 181, 14 Am. St. Rep. 831; Irish v. Smith, 8 Sargent & Rawle (Pa.) 573, 11 Am. Dec. 638; McAllister v. State, 17 Ala. 434, 52 Am. Dec. 180; Chess v. Chess, 1 Pen & W. (Pa.) 32, 21 Am. Dec. 350.

It is true that the sole question to be determined is the condition of E. J. Colvin's mind at the time he signed these contracts, but, under the circumstances of this case, there apparently being available no disinterested witness observing his mental condition at those particular times, resort was properly had to facts and circumstances preceding and following the time when the contracts were made.

Where the question of insanity of a person executing a deed, contract, or will arises, it is permissible to receive such evidence as to the condition of that person's mind both before and after the time of executing such deed, contract, or will as reasonably tends to show the mental condition of the person at the time in question. In determining such mental condition great latitude is allowed in the admission of evidence of his conversations, acts and declarations inconsistent with his sanity. Davis v. Calvert, 5 Gill. & Johnson, 269, 25 Am. Dec. 282; Lane v. Moore, supra; Rice v. Rice, supra; McCurry v. Hooper, 12 Ala. 823, 46 Am. Dec. 280; 32 C. J. 759.

The disease from which E. J. Colvin was suffering was a continuing one, and the testimony to which objection is made on account of its remoteness shows this fact. A mental ailment comes within this rule as a continuing one notwithstanding the fact that the lunatic has lucid intervals. The remoteness of some of this evidence goes to its weight rather than to its competency. The court did not sufficiently abuse its discretion as to constitute reversible error in receiving this testimony.

Plaintiff in error complains that the evidence is insufficient. This he urges largely on the ground that some witnesses testified that the lunatic had frequent lucid intervals. It is true that the burden of proof was upon the plaintiff to prove the incompetency of E. J. Colvin at the time the contracts were made. Counsel for plaintiff in error fails to support this assignment of error by quotation of testimony, citation to the record, or convincing argument.. Upon an examination of the analysis of the evidence set out in the brief of defendant in error and a study of the record itself, we are of the opinion that the evidence is clearly sufficient to support the judgment of the lower court.

The plaintiff in error urges that the evidence clearly establishes the fact that he entered into the contract with E. J. Colvin in good faith, without knowledge of Colvin's mental infirmities or notice sufficient to put him upon inquiry concerning the same. He calls attention to the fact that Colvin was "not entirely without understanding" and that his incapacity had not been previously judicially determined. So he says that by reason of the provisions of section 4982, Comp. Stat. 1921, and the general rules of law applicable, he should have been placed in statu quo by the judgment of the lower court. The facts are as above stated. The statute cited justifies rescission in such case only "without prejudice to the rights of third persons," but Edwards is a party to the contract and not a "third person."

In Pomeroy's Equity Jurisprudence, vol. 2, page 465, that eminent author says:

"And where a conveyance or contract is made in ignorance of the insanity, with no advantage taken, and with perfect good faith, a court of equity will not set it aside, if the parties cannot be restored to their original position, and injustice would be done."

In Duroderigo v. Culwell, 52 Okla. 6, 152 Pac. 605, we followed this rule and said:

"A deed of a feeble-minded person who has not been adjudged incompetent, and who is not shown to be entirely without understanding at the time of its execution, is not void, but only voidable; and in the absence of fraud, before the real estate can be recovered, the purchaser must be placed in statu quo."

We refer to the following authorities: Loman v. Paullin, 51 Okla. 294, 152 Pac. 73; Gribben v. Maxwell, 34 Kan. 8, 7 Pac. 594, 55 Am. Rep. 233.

"'In statu quo' means being placed in the same position in which the parties were at the time of the inception of a contract which is sought to be rescinded." Daly v. Bernstein, 6 N. Mex. 380, 28 Pac. 764.

This rule deals with cases where the party contracting with the lunatic acted in good faith. and such theory the evidence in the record establishes here. It makes no difference that the lunatic received no actual benefit from the money expended by the other party in good faith in discharging the duties imposed upon him by the contract. If the lunatic and his relatives and friends and those upon whom rests the moral or legal duty to protect him in his unfortunate mental condition fail to have his mental incapacity judicially determined, so that others may learn of his condition, and the mental condition and appearance of the lunatic are such that he causes even the cautious and prudent individual with whom he deals to believe in good faith that he is a fully competent person, then simple justice demands that innocent third persons be not made to suffer and lose moneys actually paid out by them in good faith in carrying into effect the contracts made by them with such lunatic whose mental condition and actions made him appear to them to be a fully competent individual. The reason of the rule requires with equal force the restitution of moneys thus expended, though the lunatic did not profit thereby, as well as where he did so.

The restore the party dealing with a lunatic to his status at the time the contract was made is all that is required in this connection. That rule does not require the payment to such party of expenses paid to obtain the contract or of moneys expended preliminary thereto, for these expenses such party incurred and would have been required to pay had the lunatic declined to enter into the contract involved. In this case Edwards says that he paid a large sum of money for overhead expenses, a proportion of which was justly chargeable to carrying on these transactions with the lunatic prior to the time the contract was signed, and he further says that he paid a further large sum as compensation to his agent who, for him. negotiated and obtained the contracts with this lunatic. He says that he had an agree-

ment with his agent that the payment of compensation to him for obtaining such contracts was contingent upon the agent obtaining contracts duly executed. This, as a matter of law, naturally implies that the contracts obtained should be legal ones. Edwards says he believed the contracts with this lunatic to be valid and only for that reason did he pay the compensation to his agent, and asserts that had the lunatic not signed these contracts he would not have paid said compensation to his agent. It is sufficient to say that, under such agreement with his agent, Edwards was not required to pay this compensation, for the agent did not obtain for his principal a valid contract. This compensation was paid by Edwards to his agent under a mistaken notion of the facts in the case, and may be lawfully recovered by Edwards from his agent on that account. Such expenses are not those incurred in attempting to discharge the duties imposed by the contract upon Edwards, and are not such items of expense for which he must be reimbursed by the lunatic in making a rescission of the voidable contract. In the case of Whiting v. Derr, 105 N. Y. Supp. 854, 121 App. Div. 239, the court well said:

"The rule that, on the rescission of a contract, the person rescinding must place the the other 'in statu quo' does not necessarily mean that the other party shall be replaced in every sense."

This is a suit in equity, and we will not require inequity of this lunatic as to restoration. The only other expense claimed by Edwards is the furnishing of some blue prints and reports, but the record is silent as to their value or the expense or cost of producing the same.

We are, therefore, of the opinion that under the rules announced and the record before us, no restoration was due by the lunatic to Edwards, and he was entitled to no compensation whatsoever as a condition precedent to the rescission of this contract.

We find no error in the record of the lower court, and its judgment is, therefore, affirmed.

JOHNSON, C. J., and BRANSON, HARRISON, and WARREN, JJ., concur.