BLANCHE A. SPARROWHAWK, Guardian of the Person and Estate of EMMA E. ERWIN, an Incompetent, Appellant, v. CYRUS W. ERWIN and DWIGHT B. HEARD INVESTMENT COMPANY, a Corporation, Appellees.

1. INSANE PERSONS — CONTRACT WITH INSANE PERSON, ENTERED IN GOOD FAITH, FOR FAIR CONSIDERATION, WITHOUT NOTICE OF INFIRMITY, AND BEFORE ADJUDICATION OF INSANITY, WILL NOT BE SET ASIDE, UNLESS PARTIES CAN BE RESTORED TO ORIGINAL POSITION.—Contract with insane person, entered in good faith, for fair consideration, without notice of infirmity, and before adjudication of insanity, will not be set aside, where it has been executed in whole or in part, unless parties can be restored to original position.

2. INSANE PERSONS—GUARDIAN AND DAUGHTER OF INCOMPETENT HELD NOT ENTITLED TO CANCELLATION OF NOTE AND MORTGAGE MADE BY LATTER BEFORE SHE WAS ADJUDGED INCOMPETENT, NOTWITHSTANDING SHE RECEIVED ONLY SMALL PART OF AMOUNT LOANED ON SUCH NOTE AND MORTGAGE.—Guardian and daughter of incompetent *held* not entitled to cancellation of note and mortgage made by latter before she was adjudged incompetent, notwithstanding she received only $125.20 of the $2,000 loaned on such note and mortgage, where mortgagee acted in good faith.

See (1) 32 C. J., p. 748, n. 59.   (2) 32 C. J., p. 745, n. 97.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Fred C. Struckmeyer, Judge. Affirmed.

Messrs. Barnum & Flanigan, for Appellant.

1.  Contracts of insane persons, when and how may be avoided, see note in 15 **Am. Dec.** 361. Validity and enforceability of contract made in good faith with incompetent before adjudication of incompetency, see note in 46 **A. L. R.** 416. See, also, 14 **Cal. Jur.** 339; 14 **R. C. L.** 590, 593, 594.

2.  Right to enforce mortgage given by incompetent person who had not been declared such, see note in 42 **L. R. A. (N. S.)** 343.

Messrs. Kibbey, Bennett, Gust, Smith & Lyman, for Appellees.

LOCKWOOD, J.—From the record the facts involved in the determination of this case appear to be as follows: Cyrus W. and Emma E. Erwin were husband and wife. During the spring of 1924 the former made application in the name of his wife to Dwight B. Heard Investment Company, a corporation, hereinafter called defendant, for a loan of $2,000, and offered as security therefor certain real estate situated in Phoenix which he claimed was the community property of himself and wife. Defendant inspected the premises and found them to be good security for the amount of the loan, and a title report showed good title in Emma E. Erwin. Believing from this and other facts in its possession that the said property was community property, a note and mortgage for the $2,000 were duly prepared by defendant, and on the fifth day of April, 1924, Mrs. Erwin and her husband came to its office. Mrs. Erwin read over the note and mortgage, apparently understanding them, and seemed satisfied therewith, signing and delivering them to the defendant; they also being signed by her husband. Erwin requested that the check be made payable to him and Mrs. Erwin was asked if that would be all right, to which she replied, "Yes." A check was then made out in his name, and delivered to him. His wife asked him to let her see it, and she looked at it and then handed it back to her husband, and the Erwins left the office.

The money, with the exception of some $125.20, was used entirely by Erwin for his separate purposes, and in no manner inured to the benefit of his wife. Several days after, the circumstances of this transaction came to the knowledge of plaintiff, herein, who is the daughter of Emma E. and stepdaughter

of Cyrus W. Erwin, and she applied for letters of guardianship of her mother on the ground of the incompetency of the latter. These letters were granted on the twenty-third day of April, and a week later she brought this suit, setting up that on the fifth day of April, at the time of the execution of the note and mortgage aforesaid, her mother, by reason of old age and weakness of body and mind, was unable to take care of herself and her property, and that at the time of signing said instruments was not competent and did not have the requisite mental faculties to transact the affair. She also alleged that defendant company knew, or could have known, of Mrs. Erwin's incompetency by the exercise of reasonable prudence on its part, and prayed that the note and mortgage be canceled and set aside.

Defendant answered, setting up the facts recited herein in regard to the transaction, and that it had no cause whatever to believe Mrs. Erwin was in anywise incompetent at the time. The matter was tried to the court and a jury, and the jury returned answers to four special interrogatories, finding in substance that Mrs. Erwin was competent at the time of executing the instruments on April 5th, and that defendant had no knowledge whatever which would have caused a reasonably prudent person to suspect or doubt her mental capacity. The court, however, made findings of fact expressly negativing the finding of competency made by the jury, and holding that Mrs. Erwin did not have mental capacity sufficient to understand what she was doing when she signed the note and mortgage. It further found that she had received only $125.20 of the $2,000 loaned by defendant, and that the latter had no knowledge of any circumstances which would cause a reasonably prudent person to doubt her capacity, and had acted in good faith in all respects during the transaction. Judgment was rendered on the

findings against plaintiff and in favor of defendant, and, after the usual motion for new trial had been made and overruled, plaintiff appealed to this court.

There are four assignments of error, but in our opinion there is only one question of law raised which it is necessary for this court to determine to decide the case. There is no dissent from the general proposition that the contract of an incompetent person is invalid. There is a conflict of authorities, however, upon the question of whether such contract is void or merely voidable. A few of the states hold that such an agreement is absolutely void, but plaintiff admits that the great weight of authority supports the rule that, where a contract with an insane person has been entered into in good faith, without fraud or imposition, for a fair consideration, and without notice of the infirmity, and before an adjudication of insanity, and has been executed in whole or in part, it will not be set aside, unless the parties can be restored to their original position. She, however, claims there is this exception to the general rule, that although the other party to a contract has parted with an adequate and valuable consideration, yet, where the incompetent has not received the benefit thereof, the contract will be set aside without the necessity of his returning it. It is the contention of defendant, on the other hand, that it is immaterial as to whom the consideration passed; the test being whether or not the other party to the contract had in good faith and at the request of the incompetent parted with the consideration. These respective rules contended for are both supported by very respectable authority, and are in hopeless conflict.

The question is a new one in this jurisdiction, and we are therefore free to decide it in accordance with what we believe to be the theory most consistent with justice and general legal principles. The true

basis for plaintiff's position is well set forth in the case of *Jordan* v. *Kirkpatrick,* 251 Ill. 116, 95 N. E. 1079. The facts in that case were almost identical, so far as the legal propositions raised thereby are concerned, with those in the case at bar. The court said:

"A deed or contract made by an idiot or lunatic before inquest found is not void, but voidable. There is, apparently, confusion in the authorities as to the terms and conditions upon which a court of equity will, at the suit of a lunatic, set aside a conveyance obtained in good faith before an inquisition and finding of lunacy. In most of the cases we have examined where this question has been before the courts, the grantor has received the benefit and advantage of the consideration paid for the conveyance. Under such circumstances a majority of the cases require that the consideration paid for the conveyance must be returned to the grantee as a condition upon which it will be set aside. . . . We have been referred to no case requiring the parties to be restored to their *status quo* where the grantor had not received the money for the conveyance or any benefit or advantage therefrom. . . . The reason given in the cases for requiring the consideration to be returned where the lunatic has received the benefit of it is that to refuse to do so would be allowing the lunacy to be the means of perpetrating a fraud. Where the benefit of the consideration is not received by the lunatic, the reason upon which the rule is based does not exist, and, in view of the difference in circumstances and opportunities of the parties, it would seem in harmony with sound principles of justice that the lunatic, having no responsibility for the transaction, and receiving no benefit therefrom, should receive the protection of the court of equity, and the loss should be made to fall on the party dealing with the lunatic. We agree with the Supreme Court of Indiana that 'the protection of persons, who are so unfortunate as to be bereft of reason and incapable of managing their own estates is of higher obligation and an object more to be cherished by the courts than is the protection

of holders of commercial paper, however innocent they may be.' *Dickerson* v. *Davis,* 111 Ind. 433, 12 N. E. 145.''

The contention of defendant is best typified by the case of *Edwards* v. *Miller,* 102 Okl. 189, 228 Pac. 1105, in which the court used the following language:

''This rule deals with cases where the party contracting with the lunatic acted in good faith, and such theory the evidence in the record establishes here. It makes no difference that the lunatic received no actual benefit from the money expended by the other party in good faith in discharging the duties imposed upon him by the contract. If the lunatic and his relatives and friends, and those upon whom rests the moral or legal duty to protect him in his unfortunate mental condition fail to have his mental incapacity judicially determined, so that others may learn of his condition, and the mental condition and appearance of the lunatic is such that he causes even the cautious and prudent individual with whom he deals to believe in good faith that he is a fully competent person, then simple justice demands that innocent third persons be not made to suffer and lose moneys actually paid out by them in good faith in carrying into effect the contracts made by them with such lunatic whose mental condition and actions made him appear to them to be a fully competent individual. The reason of the rule requires with equal force the restitution of moneys thus expended, though the lunatic did not profit thereby, as well as where he did so.''

It is not necessary, nor would it be of any particular value, for us to cite or quote, either in whole or in part, the various cases on both sides of the question. Our determination should, and must, be based upon what rule is best calculated in the long run and in the majority of cases to work the least injury. We are of the opinion that upon the whole the rule of *Edwards* v. *Miller, supra,* will, in the majority of cases, prove the most satisfactory. In much the

greater number of cases arising under a state of facts similar to this, while the action is nominally for the benefit of the estate of the incompetent, yet as a matter of fact any recovery would inure eventually, in the greater part at least, to some relative or heir, and not to the incompetent. There might be merit in the contention that, if the sole benefit of the recovery were actually to go to the incompetent, his equity is at least equal, though we cannot see where it is superior to that of the innocent other party to the contract. But certainly there is no comparison as between an heir and one who has in good faith advanced money to one whom the relatives and heirs have allowed to remain in a position where he might injure another.

The equitable maxim that, where the equities are equal, the parties will be relegated to their remedy at law, is one which, in our opinion, can well be applied in cases of this nature, and we therefore adopt the rule set forth in the Edwards case, *supra,* as the law of Arizona.

The judgment of the superior court of Maricopa county is affirmed.

McALISTER, C. J., and ROSS, J., concur.