**BERLAND'S INC. OF TULSA, a corporation, Appellant,**

**v.**

**NORTHSIDE VILLAGE SHOPPING CENTER, INC., a corporation, and Aetna Life Insurance Company, a corporation, Appellees.**

**No. 44964.**

Supreme Court of Oklahoma.

Nov. 28, 1972.

As Amended on Denial of Rehearing March 5, 1973.

Carl Pinkerton, James C. Pinkerton, Tulsa, for appellant.

Covington, Gibbon & Poe, by A. M. Covington, Tulsa, for appellees.

DAVISON, Vice Chief Justice:

This appeal brings this case before us for the third time. In the first appeal (Okl., 378 P.2d 860) we were concerned with the action of appellant, Berland's Inc. of Tulsa, a corporation, (Berland) to rescind and cancel a lease of store space in a newly constructed shopping center, executed by appellee, Northside Village Shopping Center, Inc., a corporation (Northside) as lessor, to Berland, as lessee. In addition to Northside, Aetna Life Insurance Company, a corporation (Aetna) Northside's mortgagee, was made a party defendant. What liability Aetna has in the premises has been reserved by the trial court for decision in a separate hearing. The lease, dated September 6, 1956, leased store space 60 feet by 50 feet, for a term of 15 years, in a building in a proposed shopping center to be built by Northside in accordance with a certain plot plan attached to the lease. The rental was $500.00 per month or 5% of gross sales, whichever was greater.

This plot plan (the original plan) indicated a definite and favorable relationship between the leased space, the North parking area, Froug's Department Store, and the entrances to the parking area. This

favorable location of the store space portrayed in the original plan, induced Berland to execute the lease. "After learning with the other tenants from Northside that the parking and entrance arrangements of the shopping center were to be substantially revised, Berland refused to agree to the revised plans, but said it would take possession conditionally and would waive the parking requirement if the revised parking arrangements were found to be adequate. Berland did not find them to be adequate and after several meetings between Berland's and Northside's attorneys, and after Northside refused cancellation, Berland filed a suit to cancel the lease in December, 1958. The Supreme Court's opinion, reversing the judgment of the trial court and decreeing cancellation (378 P.2d 860), was based upon the uncontroverted fact "that the lease would not have been made if the breach had been expected or contemplated (378 P.2d 865[4])." Because Northside had refused cancellation, Berland was obliged to continue in possession and pay the rent stipulated in the lease. As indicated above, in 1957, Northside employed a new engineering firm and a revised parking plan was adopted later that vitiated certain favorable relationships for Berland that inhered in the original plan.

This violation of an important lease covenant prompted the action of Berland against Northside to rescind and cancel the lease of September 6, 1956. The trial court, concluding Northside's breach of the lease contract was not so substantial as to defeat the object of the lease and that the breach had been waived by Berland, denied rescission and cancellation. Berland appealed. After a careful and comprehensive review of the record, we, concluding the judgment of the trial court was clearly against the weight of the evidence, reversed the judgment of the trial court with directions to the trial court to render judgment in accordance with our view that the lease should have been rescinded and cancelled. The mandate directed the trial court to cause such reversal and remand to

be shown of record and "to issue such process and take such other and further action as may be in accord with right and justice and said opinion."

Upon the filing of the mandate in the trial court, Berland filed in the trial court its application for restoration to status quo. Thereafter, the trial court sustained Northside's and Aetna's motion to strike Berland's application for restoration to status quo on the ground that our decision directing a rescission and cancellation of the lease precluded Berland from obtaining any judgment or relief of restoration to status quo, or any other relief except the judgment of rescission and cancellation of the lease.

This decision of the trial court prompted the second appeal of this case (Okl., 447 P.2d 768). On this appeal we held that restoration to status quo was left open by the mandate, State ex rel. Goldsborough v. Huston, Judge, 28 Okl. 718, 116 P. 161; that a court of equity will retain jurisdiction to administer complete relief, Watkins v. McComber, 208 Okl. 352, 256 P.2d 158, 162; Franklin v. Margay Oil Corporation, 194 Okl. 519, 153 P.2d 486, 500; that a rescission and cancellation puts the parties back in the same position in which they were prior to the making of the contract, Evans v. Brubaker, 207 Okl. 42, 247 P.2d 511, 513; that a return of the parties to status quo by restoring to each other everything of value received under the contract is what is required after rescission and cancellation, 15 O.S.1961, § 235.

Accordingly, we reversed the judgment of the trial court with directions to make the determination necessary to restore Berland and Northside to status quo.

After a review of the entire record in this case, including the testimony of witnesses sworn and examined in open court and the testimony of witnesses taken by deposition, the trial court, in restoring the parties to status quo, found and decreed:

(1) I. A. Jacobson has stipulated that any judgment entered herein against

Northside shall also go and be entered against him in his individual capacity;

(2) Berland should recover from Northside and from Jacobson the total rent paid by Berland to Northside in the sum of $29,750.00, with interest on each monthly payment from the first day of the month on which said payment was due at the rate of 6% per annum, less all offsets hereinafter allowed to Northside.

(3) Although Berland promptly sought rescission of the lease, Northside maintained that the lease was valid and binding in every respect and refused to terminate the lease and Berland, although seeking rescission, operated its store in the premises continuously from February 15, 1958, to March 1, 1963;

(4) The premises during Berland's occupancy had a fair market rental value in the community and Berland, as a matter of law is required to restore to Northside the fair market rental value of the premises during the term of Berland's occupancy. The fair market rental value of the premises for the first two years of Berland's occupancy was $12,000.00, and for the remaining term was $13,312.50, or a total of $25,312.50, together with interest thereon at the rate of 6% per annum from the date on which said rent is due.

(5) Berland is not entitled to recover $1250.00 that Berland paid Northside at the rate of $250.00 per year for maintenance and lighting of the common area because these payments were considered in the trial court's determination of the fair market rental value of the premises during Berland's occupancy.

(6) In the operation of its shoe store, Berland installed fixtures, including trade fixtures, at a cost of $14,196.00 and made leasehold improvements in the amount of $1295.00, or a total investment of $15,491.00. During its occupancy, Berland depreciated this investment to a cost of $10,000.00 and immediately after the Supreme Court rescinded the lease of the store space from Northside to Berland, Berland sold the fixtures and improvements for $2000.00. Berland is not entitled to recover this loss from Northside.

On the basis of the foregoing, the trial court rendered judgment for Berland against Northside and I. A. Jacobson and, each of them, in the sum of $7,038.75, with interest at 10% per annum from the date of judgment and in the further sum of $193.00 costs and costs hereafter accruing.

The amount of the judgment is the difference between $29,750.00 in item 2 above, and $25,312.50 in item 4 above, plus interest at 6% per annum on each monthly rental due and paid under the lease from date of payment.

Berland says the trial court erred in that part of its judgment decreeing that Berland should restore to Northside the fair market rental value of the premises during the period of Berland's occupancy instead of the value of the premises to Berland, and, secondarily, that the trial court's determination of the fair market rental value was much higher than the evidence justifies. Berland urges, additionally, that Northside should restore to Berland the loss it suffered on the fixtures installed and other investments made by Berland in the leased premises.

The criterion for restoration to the status quo is found in the following statutory provisions; 15 O.S.1961, § 235:

"Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

1. He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and,

2. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable, or positively refuses to do so."

Interpolated in Berland's arguments is the suggestion that if restoration to the status quo portends hardship, the hardship should fall upon Northside whose conduct in breaching the lease constituted the grounds for the rescission. We reject this view in reaching whatever decision we may reach, because an action for restoration to the status quo is not punitive. Every indication in § 235 is to the contrary. In fact, restoration to the status quo restores the parties to their relationship before any contract was made and, therefore, before any breach occurred. Okl., 447 P.2d 768, 772. The asserted willingness of the one who seeks rescission to restore the opposite party to the status quo is a condition precedent to rescission. 15 O.S.1961, § 235.

■ We agree with that part of the trial court's judgment which required Berland to restore to Northside the fair market rental value in the community of the store space during Berland's occupancy. Mortensen v. Berzell Investment Company, 102 Ariz. 348, 429 P.2d 945[4]. In the process of restoring each party to the status quo, the trial court had first required Northside to restore to Berland the rental Berland had paid to Northside under the provisions of the lease. This restoration is not questioned. See National Conversion Corp. v. Cedar Building Corp., 23 N.Y.2d 621, 298 N.Y.S.2d 499, 246 N.E.2d 351 [8] & [9].

■ The trial court, in the judgment, applied the fair market rental value "as the price that a willing tenant would pay a willing landlord, both in full possession of the relevant facts and neither under any compulsion to lease or rent the premises." While there was a marked difference of opinions among the experts called by each of the parties to testify, we conclude from an examination of the record that the judgment of the trial court that $25,312.50 was the fair market rental value of the store space during Berland's occupancy, is not against the clear weight of the evidence. Berland's, Inc. of Tulsa v. North-

side Village Shopping Center, Okl., 378 P. 2d 860.

■ Berland insists, additionally, that Northside be required to restore to Berland the loss Berland suffered on the installation of the fixtures and their subsequent re-possession, salvage and sale by Berland upon Berland's relinquishment of the premises after rescission. Berland installed the trade fixtures at a cost of $14,196.00 and made leasehold improvements in the amount of $1295.00, a total investment of $15,491.00. Berland urges that Northside should restore this expenditure to Berland and relies upon the following language in our opinion on the second appeal (Okl., 447 P.2d 768, 772):

"In Edwards v. Miller, 102 Okl. 189, 228 P. 1105, it was held that to place a party in status quo, means to place such party in the same position in which he was situated at the time of the execution of the contract, and to do so it is generally required that there be paid to such party all moneys, necessarily, properly, and judiciously expended by such party in good faith in discharging the duties apparently imposed upon him by such contract."

The trial court denied Berland restoration for these expenditures assigning as the reason: "This did not constitute something of value which the defendant [Northside] received from the plaintiff [Berland]." We disagree. The installation of the fixtures to put the store space that Berland rented from Northside in an operable condition was an obligation that Berland owed Northside under the lease. Its translation into monetary value to Northside is obvious. The more store spaces that house operating stores in a shopping center, the greater the rental value of both the leased and unleased space. It is almost trite to say that more operating stores attract more customers to the shopping center. In a qualitative sense an operating store, as such, has the same monetary value to the owner of the shopping center as the rent and the obligation to put

the store in an operable condition had a monetary value to Northside in the same sense that Berland's obligation to pay rent had such a value. The real difference is quantitative—not qualitative.

This is precisely what we meant in Edwards v. Miller, supra, when we stated what is meant by restoration to the status quo. We there said: "* * * to do so it is generally required that there be paid to such party [Berland] all moneys, necessarily, properly, and judiciously expended by such party [Berland] in good faith in discharging the duties apparently imposed upon him by such contract." Accordingly, we modify the judgment of the trial court by requiring Northside to pay to Berland, in addition, the sum of $8000.00, which, after depreciating the value of the fixtures to $10,000.00, represents the loss that Berland suffered on the sale of the used fixtures for $2000.00. The disposition of the fixtures after their sale by Berland, some of which were acquired by Northside, indicates that $2000.00 was a fair and reasonable price.

As so modified, the judgment of the trial court is affirmed.

All Justices concur.