HOWARD McLAUGHLIN *et al.*, Plaintiffs-Appellees, *v.* ATTORNEYS' TITLE GUARANTY FUND, INC., Defendant-Appellant.

Third District   No. 78-16

Opinion filed July 6, 1978.

James E. Lloyd, of Claudon, Lloyd & Barnhart, Ltd., of Canton, for appellant.

Larry M. Leiken and Stephen W. Snively, both of Kavanagh, Scully, Sudow, White & Frederick, of Peoria, for appellees.

Mr. PRESIDING JUSTICE BARRY delivered the opinion of the court:

Prior to and on June 3, 1974, Minnie Witte Knuppel was the owner of certain real estate located in Mason County, Illinois, and on that date she granted an option to purchase the real estate to the plaintiffs, Howard and Dorothy McLaughlin, which option was exercisable only at the death of Ms. Knuppel. The option was subscribed and sworn to before Kenneth H. Lemmer, in his capacity as a notary public.

Thereafter, on January 25, 1975, Ms. Knuppel died. When the estate was admitted to probate, Lemmer was appointed as the executor. On February 13, 1975, the plaintiffs exercised the option for the purchase of the real estate. At that time, they were aware that the option price of $90,000 was much less than the fair market value of the real estate, about $151,000.

Lemmer acknowledged the plaintiffs' exercise of the option and petitioned the Mason County Circuit Court for authorization to complete the sale. This authorization was given and the executor, additionally, was instructed by the trial court to furnish the plaintiffs a title insurance policy at the expense of the estate.

A commitment for title insurance was issued to the plaintiffs by the defendant through its agent, the same Kenneth H. Lemmer. The commitment, however, made no exception for inheritance tax arising from the distribution out of the Knuppel estate. Nor did the title insurance policy issued on August 27, 1975, after the real estate transaction was consummated and a deed was conveyed to the plaintiffs.

As executor of the Knuppel estate, Lemmer filed an Illinois inheritance tax return on November 7, 1975, which indicated that the plaintiffs were required to pay $5,928 by reason of the purchase of the real estate, the amount of tax being computed on the difference between the option price and the appraised value of the real estate at the time of Ms. Knuppel's death.

On November 19, 1975, the plaintiffs filed an objection to the inheritance tax assessment. The objection was opposed by Lemmer and denied February 23, 1976, in an opinion and order of the Circuit Court of Mason county. The plaintiffs paid the tax and brought suit against the defendant on the title insurance policy alleging a defect in title which was covered by the policy.

Following a bench trial, the defendant's motion for a directed verdict was denied, and judgment was entered in favor of the plaintiffs. From this determination the defendant appeals.

As issues, the defendant requests that we determine whether the judgment for the plaintiff was against the manifest weight of the evidence and whether the trial court erred by denying the defendant's motion for a directed verdict. When a motion for a directed verdict is addressed to a trial court sitting without a jury, a reviewing court will not reverse the decision of the lower court unless the decision is contrary to the manifest weight of the evidence. (*City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 349 N.E.2d 399.) Since the standard for deciding both issues is the same, consideration of each of the defendant's contentions concerning whether the trial court improperly denied the defendant's motion for a directed verdict will determine whether the judgment of the trial court was against the manifest weight of the evidence.

Initially, the defendant contends that the terms of the title insurance policy exclude from coverage the matter of which the plaintiffs complain. More specifically, the defendant argues that either the matter complained of arises as a direct and proximate result of an act, condition or relationship created, suffered or permitted by the insured and is, therefore, not covered, or the matter complained of has resulted in no loss to the plaintiff which is cognizable under or covered by the title insurance policy.

■■■ The title policy contains a rather general exception that the insurer is not liable if the encumbrance to title arises as a result of any act, condition or relationship "created, suffered or permitted" by the insured. In construing insurance policies, although the courts are not to distort the language of the policy to create ambiguities in order to rewrite the policy, where ambiguities do exist, the policy is to be liberally construed (*Smiley v. Estate of Toney* (2d Dist. 1968), 100 Ill. App. 2d 271, 241 N.E.2d 116, *aff'd* (1969), 44 Ill. 2d 127, 254 N.E.2d 440), and the ambiguity ought to be

resolved in favor of the insured. (*Iowa National Mutual Insurance Company v. Fidelity & Casualty Co.* (2d Dist. 1965), 62 Ill. App. 2d 297, 210 N.E.2d 622.) Where the insurer attempts to limit its liability by equivocal or ambiguous expressions, those provisions are to be construed against the insurer. *Lenkutis v. New York Life Insurance Co.* (1940), 374 Ill. 136, 28 N.E.2d 86.

Applying these principles, courts of other jurisdictions have construed the terms "created, suffered or permitted" as used in title insurance policies to require either an affirmative act on the part of the insured which results in an encumbrance or the knowing or intentional failure of the insured to prevent the attachment of the encumbrance where the insured had the power and ability to do so. *Arizona Title Insurance & Trust Co. v. Smith* (1974), 21 Ariz. App. 371, 519 P.2d 860; *Feldman v. Urban Commercial, Inc.* (1965), 87 N.J. Super. 391, 209 A.2d 640; *Hansen v. Western Title Insurance Co.* (1963), 220 Cal App. 2d 531, 33 Cal. Rptr. 668; *First National Bank & Trust Co. v. New York Title Insurance Co.* (1939), 171 Misc. 854, 12 N.Y.S. 2d 703.

■■ Neither the exercise of the option nor the purchase of the real estate created the encumbrance or permitted its existence. Generally, inheritance taxes accrue and become due and payable at the death of the decedent. (Ill. Rev. Stat. 1977, ch. 120, par. 377.) If the legacy upon which the tax is computed is payable to the beneficiary out of real estate, the tax remains a charge on the real estate until it is paid to the executor. (Ill. Rev. Stat. 1977, ch. 120, par. 378.) The transfer involved in this case was subject to inheritance tax because the option was exercisable only upon the death of the grantor, and the transfer was "intended to take effect in possession or enjoyment at or after such death." Ill. Rev. Stat. 1977, ch. 120, par. 375(1)(3).

■■ ■ Therefore, the plaintiffs, by exercising the option, were in the same position had they been merely devisees under the decedent's will. Although the Illinois inheritance tax is considered to be a tax imposed against the beneficiary (*Lawless v. Lawless* (3d Dist. 1958), 17 Ill. App. 2d 481, 150 N.E.2d 646), the Attorney General, to collect the tax, may choose not only to sue the individual beneficiary, but also may enforce the lien of inheritance tax against the property in chancery or secure an injunction against the transfer, delivery or disposition of the property. It seems very clear that, even though the tax is assessed against an individual beneficiary, the lien, which arises at the death of the decedent, the entire estate of the decedent being chargeable with claims of inheritance tax during administration (Ill. Rev. Stat. 1977, ch. 110½, par. 18—14), affects the beneficiaries' title to the property.

The purpose of title insurance is to protect a transferee of real estate from the possibilities of loss through defects which may cloud title.

(*United States v. City of Flint* (E.D. Mich. 1972), 346 F. Supp. 1282.) The issuance of the policy is "predicated upon careful examination of the muniments of title, an exhaustive study of the applicable law and the exercise of expert contract draftmanship." (*United States v. City of Flint* (E.D. Mich. 1972), 346 F. Supp. 1282, 1285.) When a person seeks title insurance, he expects to obtain a professional title search, legal opinion as to the condition of title, and a guarantee. (*Lawyers Title Insurance Corp. v. Research Loan & Investment Corp.* (8th Cir. 1966), 361 F.2d 764.) Accordingly, the insurer has a duty to search the records and examine the applicable law before issuing its commitment or policy.

■■ The lien for inheritance tax was determinable by the defendant, and it should have been determined. Since the lien was not created, suffered or permitted by the plaintiffs, the failure of the defendant to specify the inheritance tax as an exclusion to the coverage of the policy leaves the defendant open to liability for the undiscovered defect in title.

■■ Nor is the defect excluded from coverage because the title was insured for $90,000 and the plaintiffs were taxed on that amount of the fair market value in excess of $90,000. The policy insures the title "against all loss or damage, not to exceed the declared value herein shown * * *."

A title insurance policy does not insure the value of any particular property. In fact, it does not insure the property at all. If the value of the property appreciates or depreciates, the title policy is not affected. Instead, the defendant is insuring the title against defects which may damage the plaintiffs' interest in the property. Through its agent, the defendant was, or should have been, aware of the fair market value of the property and was in total control of setting the premium as well as the face value of the policy. The amount of damage reimbursible by reason of the title policy in this case cannot exceed $90,000, the amount paid for the purchase of the property. The defect in this case damaged the plaintiffs' interest to the extent of $5,928, or the amount of the inheritance tax lien. $5,928 does not exceed $90,000. Therefore, we find that this defect in title is not excluded from the policy coverage.

Another contention of the defendant is that, even if there is coverage under the title policy, the defendant is not liable under the coverage because the plaintiffs failed to give the defendant prompt notice in violation of the policy, or reasonable notice in any event, of the claim for payment of the inheritance tax. Written notice was not received by the defendant until March 15, 1976, even though the plaintiffs received notice of the assessment on November 7, 1975. However, the final order assessing the tax against the plaintiffs was not entered until March 18, 1976. The policy stated that, unless written notice is addressed to the defendant within seven days after summons or other process in an action or proceeding is served upon the insured, the defendant's liability in

regard to the subject matter of the proceeding shall cease and terminate.

A breach of notice clause cannot be asserted as a defense to the liability of an insurer under an insurance policy unless the insurance company has proven actual prejudice from the failure of the insured to give notice. (*Lindus v. Northern Insurance Co.* (1968), 103 Ariz. 160, 438 P.2d 311; *Moe v. Transamerica Title Insurance Co.* (1971), 21 Cal. App. 3d 289, 98 Cal. Rptr. 547; *Arizona Title Insurance & Trust Co. v. Pace* (1968), 8 Ariz. App. 269, 445 P.2d 471.) The purpose of requiring notice to an insurer of a claim against the insured is to enable the insurance company to make the necessary prompt and thorough investigation of facts and circumstances affecting the question of liability and the extent of liability. (*Kenworthy v. Bituminous Casualty Corp.* (4th Dist. 1975), 28 Ill. App. 3d 546, 328 N.E.2d 588; *Vignali v. Farmers Equitable Insurance Co.* (3d Dist. 1966), 71 Ill. App. 2d 114, 216 N.E.2d 827.) However, where the insurance company has actual notice of the loss or receives the necessary information from some other source, there is no prejudice to the insurer from the failure of the insured to give notice of the claim. *Wehner v. Foster* (1951), 331 Mich. 113, 49 N.W.2d 87; *United States Fidelity & Guaranty Co. v. Church* (N.D. Cal. 1952), 107 F. Supp. 683.

Lemmer, agent of the defendant and executor of the Knuppel estate, knew of the claim for inheritance tax against the plaintiffs when that claim was made. That is well within the seven-day notice period. As a result, the defendant had actual knowledge of the claim. Nor could the failure to give notice have prejudiced the investigation of the defendant since Lemmer was intimately involved in every phase of the underlying transaction and he possessed knowledge of all the information the defendant would ever need to discover in its investigation.

Because the claim for inheritance tax had not been excluded from the coverage of the title insurance policy and the defendant was not prejudiced from the failure to receive formal notice of the claim, and therefore cannot assert that failure as a defense, the actions of the trial court denying the defendant's motion for a directed verdict and rendering judgment in favor of the plaintiffs is not against the manifest weight of the evidence. Accordingly, the judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

ALLOY and SCOTT, JJ., concur.