**CITICORP SAVINGS OF ILLINOIS, Plaintiff–Appellant,**

v.

**STEWART TITLE GUARANTY COMPANY, Defendant–Appellee.**

No. 87–1225.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1987.

Decided Feb. 22, 1988.

---

Martin E. Hauselman, Liebling & Hauselman, Chicago, Ill., for plaintiff-appellant.

Mitchell S. Goldgehn, Greenberg, Keele, Lunn & Aronberg, Chicago, Ill., for defendant-appellee.

Before CUDAHY and COFFEY, Circuit Judges, and NOLAND, Senior District Judge.[*]

CUDAHY, Circuit Judge.

In May 1979, James D. Haggerty & Co. sold some real estate to Charles Robinson. The parties executed a mortgage securing

---

[*] The Honorable James E. Noland, Senior District Judge of the Southern District of Indiana, is sitting by designation.

a note for the bulk of the purchase price. Defendant Stewart Title Guaranty Company ("Stewart Title") issued an insurance policy to Haggerty, insuring against loss sustained due to "[t]he invalidity or unenforceability of the lien of the insured mortgage upon said estate...." Supplementary Appendix of Appellee at 4 (hereinafter "Appendix").[1] Haggerty immediately assigned the mortgage and note to a predecessor of plaintiff, Citicorp Savings of Illinois, which had financed the transaction.[2]

Some time later, Citicorp was notified that Robinson had been adjudicated incompetent in May 1953, 26 years before the purchase. A conservator (now referred to as "guardian" by the relevant Illinois statutes) was appointed. Robinson was not restored to legal competency prior to May 1979.

Citicorp notified Stewart Title of the apparent policy breach. Stewart Title and the guardian arranged for transfer of title by quitclaim deed to Stewart Title in exchange for $1,550.91, Robinson's down payment on the property. The probate court accepted this agreement, and the property was transferred to Stewart Title.

Stewart Title tendered the deed to Citicorp. Citicorp refused to accept the deed, saying that tender was not a valid option under the policy and Citicorp was enti'led to $27,000 damages due to the unenforceability of the mortgage lien. Citicorp then filed this action in July 1986 for breach of the policy.

Both parties filed summary judgment motions. Noting that this case involves only the construction of documents, the district court granted Stewart Title's summary judgment motion and denied Citicorp's motion. *Citicorp Sav. v. Stewart Title Guar. Co.*, No. 86 C 4833 (N.D.Ill. Jan. 12, 1987). In granting Stewart Title's motion, the court held that "by tendering title to the plaintiff, the defendant has given the plaintiff everything to which it was entitled." *Id.*, transcript at 4. The court also stated that the guardian may have affirmed the mortgage by transferring the property to Stewart Title, *id.* at 3, but made clear in a hearing on Citicorp's motion to reconsider that this was not a basis of the decision. *See Citicorp Sav. v. Stewart Title Guar. Co.*, No. 86 C 4833, transcript at 4 (N.D.Ill. Feb. 6, 1987) ("I granted summary judgment because I believe that the defendant has tendered to you all that you are entitled to.") Citicorp appeals. Applying Illinois law, we reverse.

### I.

Under the federal rules, summary judgment is appropriate where the pleadings and supplemental materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56. This case presents one disputed issue of fact—whether the guardian ratified Robinson's agreement—but that issue is not material to the outcome, as will be discussed below.

The case boils down to two disputes over construction of the insurance policy. First, the parties disagree about whether the policy was breached. Second, if the policy was breached, the parties cross swords over whether tendering the deed cured that breach. The district court's disposition of the second question made resolution of the first unnecessary. Since we disagree with Judge Marshall on the second issue, we consider both issues in turn.

---

**1.** The pertinent policy provision provides:
[Stewart Title] insures ... against loss or damage not exceeding the amount of insurance stated in Schedule A and costs attorneys fees and expenses which the Company may become obligated to pay hereunder, sustained or incurred by the insured by reason of
....
5. The invalidity or unenforceability of the lien of the insured mortgage upon [the estate described in Schedule A]....

Appendix at 4. Schedule A to the policy lists the amount of insurance as $27,000, and describes the insured estate or interest as a fee simple vested in Robinson. *Id.* at 5. The "insured mortgage" is described as Robinson's mortgage granted to Haggerty to secure a $27,000 debt. *Id.*

**2.** Hereinafter Citicorp Savings of Illinois and its predecessors will be referred to collectively as "Citicorp."

## II.

If a contract entered into by an incompetent were void as a matter of law, the parties would probably not be before us today. Obviously if Robinson could not contract, the mortgage lien was unenforceable and invalid. Life, unfortunately, is rarely so simple.

■ Under Illinois law, "[e]very ... contract by any person for whom a plenary guardian has been appointed or who is adjudged to be unable to so contract is void as against that person and his estate, but a person making a contract with the person so adjudged is bound thereby." Ill.Rev. Stat. ch. 110½, para. 11a–22 (1985). In lawyer's parlance, the contract is "voidable." *See, e.g. Brandt v. Phipps,* 398 Ill. 296, 315, 75 N.E.2d 757, 766 (1947); *Jordan v. Kirkpatrick,* 251 Ill. 116, 120, 95 N.E. 1079, 1080 (1911). The guardian of the incompetent person is free to enforce or reject the contract.[3] Thus, the question presented is whether a *voidable* mortgage lien constitutes "invalidity or unenforceability of the lien" under the policy.

It is helpful to begin by noting the principles used by Illinois courts to construe insurance policies. *See generally National Fidelity Life Ins. Co. v. Karaganis,* 811 F.2d 357, 361 (7th Cir.1987) (discussing Illinois rules of insurance policy interpretation). Obviously, where the policy language is clear, it is to be given its plain and ordinary meaning. *Id.* However, "if a provision of an insurance contract can reasonably be said to be ambiguous it will be construed in favor of the insured and against the insurer, who was the drafter of the instrument." *United States Fire Ins. Co. v. Schnackenberg,* 88 Ill.2d 1, 4, 57 Ill.Dec. 840, 842, 429 N.E.2d 1203, 1205 (1981); *see also National Fidelity,* 811 F.2d at 361; *Goldblatt Bros., Inc. v. Home Indem. Co.,* 773 F.2d 121, 125 (7th Cir. 1985). "A term is ambiguous if it is subject to more than one reasonable interpretation." *National Fidelity,* 811 F.2d at 361.

■ We find that on the facts of this case the policy is ambiguous. One plausible interpretation, urged on us by Stewart Title, is that a voidable mortgage is not necessarily invalid or unenforceable, since the guardian could choose to enforce it against Citicorp. Another reasonable construction, pressed by Citicorp, is that the lien was unenforceable *ab initio* by Citicorp, since a voidable mortgage lien cannot be enforced by the mortgagee and the policy was intended to ensure that *Citicorp* could enforce the lien.

Either of these interpretations is reasonable. When one examines the purposes of title insurance, it becomes clear that Citicorp's construction is not only correct under mechanical application of the interpretive canons, but is also probably what the parties intended when they entered the agreement. More precisely, it is probably what they would have intended had they given any thought to this unique problem.

Put most simply, "[t]he purpose of a title insurance policy is ... to protect a purchaser of real estate against title surprises." *Pohrer v. Title Ins. Co.,* 652 F.Supp. 348, 352 (N.D.Ill.1987). The mortgagee relies on the title insurer's expertise in checking public records; the lender parts with a great deal of money in reliance upon the insurer's guarantee that the lien is valid. *Cf.* 9 J.A. Appleman & J. Appleman, *Insurance Law and Practice* § 5201 (1981). "Thus he expects the insurer to have researched the applicable law, as well as the records, before issuing the commitment and to provide him with areas in which he might find surprises—not to itself surprise him with the use of ambiguous clauses." *Pohrer,* 652 F.Supp. at 353; *see also McLaughlin v. Attorneys' Title Guar.*

---

3. In addition, the trustee may, with court approval, "execute and deliver any bill of sale, deed or other instrument." Ill.Rev.Stat. ch. 110½, para. 11a–18(b) (1985). That action, distinct from ratification of the contract, was taken by the guardian here in order to transfer the property to Stewart Title. We need not decide whether that action constituted a decision to affirm the validity of the mortgage, although we note that the guardian stated the contract was "void," and tendering the quitclaim deed was consistent with an intent to "undo" rather than ratify the transaction.

*Fund, Inc.,* 61 Ill.App.3d 911, 916, 18 Ill. Dec. 891, 895, 378 N.E.2d 355, 359 (3d Dist.1978).

As a practical matter, Citicorp would not have extended $27,000 credit to Robinson on the basis of a voidable mortgage. No lender would do so. Citicorp gave Robinson $27,000 on Stewart Title's promise that the mortgage lien was enforceable *by Citicorp.* In actuality, at that time Citicorp could not enforce the lien. It could only do so at some future date *if* Robinson's guardian affirmed the lien's validity. In May 1979, Citicorp's lien was unenforceable, regardless of whether the guardian *later* ratified it.[4]

Stewart Title breached the policy's guarantee of the mortgage's enforceability, and Citicorp is therefore entitled to $27,000 in damages, the amount they gave Robinson in reliance upon Stewart Title's guarantee, unless tender of the deed cured the defect.

### III.

■ The next question, resolved by the district court in Stewart Title's favor, is whether Stewart Title's tender of a quitclaim deed to Citicorp cured the policy breach. The relevant policy provision states that no claim is payable if Stewart Title, after notice, "removes such defect, lien or encumbrance and establishes the title, or the lien of the insured mortgage, as insured...." Policy para. 7, Appendix at 10.[5] The district court held that tendering the deed gave Citicorp everything to which it was entitled. It is not clear whether Judge Marshall meant that the deed was an effective substitute for damages or that it satisfied the cure provision. Construing the provision in light of the

entire policy, we disagree with both interpretations.

First, it is worth noting that nowhere in the policy does it state that the insurer may tender the property's deed in lieu of damages. Stewart Title can cite no case allowing that remedy. Indeed, the policy contains an explicit provision governing "Determination and Payment of Loss." Policy para. 6, Appendix at 9. That provision is drafted solely in *monetary* terms. By implication, damages are not payable in real estate, any more than they are payable in potatoes or colored beads.

More important, tender is an imperfect substitute for damages in this case. Citicorp loaned $27,000, and the land was worth at least $27,000 in May 1979. By the time Stewart Title tendered the deed, however, the land may have been worth much less due to changes in market value.[6] The policy was breached in 1979, and the loss became fixed at that time. Stewart Title should therefore bear any risk of market value decline in the property after that time.[7] This supports our conclusion that the parties could not have intended tender of the real estate to be an acceptable substitute for damages.

■ That determination leaves us with the most difficult question: whether tendering the deed "establish[ed] ... the lien of the insured mortgage, as insured...." Policy para. 7, Appendix at 10. As a practical matter, the policy was intended to ensure that, if Citicorp needed to foreclose on the mortgage, it would be able to do so. Stewart Title contends that since foreclosure would give Citicorp the property, tendering the deed in effect established the mortgage lien.

---

**4.** Our interpretation of the policy makes a remand to determine whether Robinson's guardian affirmed the contract unnecessary. As a matter of law, Stewart Title breached the policy regardless of any later conduct by the guardian.

**5.** The provision reads in relevant part:
   7. LIMITATION OF LIABILITY
     No claim shall arise or be maintainable under this policy (a) if the Company after having received notice of an alleged defect, lien or encumbrance insured against hereunder, by litigation or otherwise, removes such

     defect, lien or encumbrance and establishes the title, or the lien of the insured mortgage, as insured....
   Appendix at 10.

**6.** Citicorp stated at oral argument that this is true, but it is not evident from the district court record.

**7.** The insurer was, of course, free to sell the property after payment of the loss. *See* Policy para. 10, Appendix at 10.

While Stewart Title's argument is reasonable, ultimately it fails. The "insured mortgage" is defined in the policy as Citicorp's mortgage on *Robinson's* interest in the property. That lien was unenforceable by Citicorp at its inception. Had Stewart Title informed Citicorp of that fact, the thrift would not have loaned Robinson $27,-000. The "Limitation of Liability" provision was intended to allow the insurer to cure a defect in the lien, for example by obtaining a subordination agreement from an undiscovered senior lienor. *See, e.g.,* 9 J.A. Appleman & J. Appleman, *supra* p. 5, at § 5214. In this instance, *no* action by Stewart Title could have established the mortgage lien as insured, since we concluded, *supra* p. 530, that voidable title was one of the risks insured against by Stewart Title. The policy was irrevocably breached and the loss incurred as soon as Citicorp loaned Robinson the money. It is one thing to say that the policy allows Stewart Title to correct defects in a lien's priority. It is quite another to contend that Stewart Title may "correct" a voidable mortgage, which the mortgagee would never have entered had it been informed of the voidability, by tendering a deed to the property years later. Tender does not remove the fact that no money would have changed hands but for Stewart Title's mistake.

As a practical matter, Stewart Title failed in its duty to check the lien's validity. It now seeks to have us stretch the policy's language so that Citicorp bears the costs of sale plus any decline in the property's value, even though without Stewart Title's mistake Citicorp never would have loaned any money to Charles Robinson. This proposed reading of the policy taxes credulity and is inconsistent with the notion that an insurance policy should be construed to effect the *ex ante* intentions of the parties. Stewart Title could have drafted a policy that in plain language achieved the result it desires. It clearly did not do so and ought not to gain through strained "interpretation" what it failed to earn in the drafting. We therefore reverse the grant of Stewart

Title's motion, and remand with directions to grant summary judgment in favor of Citicorp, with damages of $27,000.[8] Stewart Title is of course free to sell the property to mitigate its losses.

## IV.

■ Because of our disposition of this case, we must reach one further question. Both here and in the district court, Citicorp has requested the award of attorney fees and punitive damages under Ill.Rev.Stat. ch. 73, para. 767 (1985), and the award of prejudgment interest under Ill.Rev.Stat. ch. 17, para. 6402 (1985). Both statutes require as a condition of the award that withholding of payment be "unreasonable and vexatious." This is a close case and we deny these supplemental remedies.

In short, we hold that Stewart Title breached its policy by failing to discover Robinson's incompetence and that tender of a quitclaim deed to Citicorp did not cure that breach. Therefore, we REVERSE and REMAND for entry of judgment for Citicorp in the amount of $27,000.

REVERSED AND REMANDED.

COFFEY, Circuit Judge, dissenting.

In failing to accord the proper construction, much less a reasonable interpretation, to an unambiguous provision in a contract of title insurance, the majority's decision refuses to allow the insurer to remove a defect in the title, thus rendering the lien against the mortgage unenforceable, as explicitly set forth in the language of the policy. Neither the majority nor the parties to this suit have cited any Illinois case that addresses the question: whether a policy of title insurance providing that "no claim shall arise or be maintainable under this policy (a) if the company after having received notice of the alleged defect ... removes such defect ... or establishes the title, or the lien of the insured mortgage ... within a reasonable time after receipt of such notice ..." (Policy, paragraph sev-

---

**8.** Stewart Title does not dispute that the property was worth at least $27,000, the policy limit, in May 1979.

en) gives the insurer the right to clear the insured's title by delivering to the insured a valid deed to the subject real estate. The majority fails to rely, as it must, on principles recognized by Illinois courts when interpreting the provisions of an insurance policy. Rather, the majority reaches out to gain support for its theory of law that the parties' intent can be found outside the language of an unambiguous contract, a theory that runs squarely counter to this court's decision in *Sunstream Jet Express, Inc. v. Int'l Air Service Co.*, 734 F.2d 1258, 1267–68 (7th Cir.1984), holding that where a contract is unambiguous, Illinois courts do not allow the trier of fact to consider extrinsic and parole evidence to determine the parties' intent. In support of the majority's novel theory, they delve into the treacherous valley of speculation and state that the parties would not have intended to allow Citicorp to exercise its rights under an unambiguous insurance provision to remove the defect in title in issue here. Because proper application of the principles governing contract interpretation, including those of insurance contracts, leads me to a contrary result, I respectfully dissent.

I set forth only those facts necessary to explain my reasoning. One Charles Robinson (adjudicated incompetent and appointed a guardian on May 7, 1953) purchased real estate from James D. Haggerty & Co. in May, 1979 (without Haggerty's knowledge of Robinson's incompetency) and executed a mortgage in favor of Haggerty to secure the majority of the purchase price.[1] Stewart Title, the insurer, issued a policy of title insurance to Haggerty, who in turn as-

signed the policy and the mortgage to a predecessor of the plaintiff, Citicorp. After Citicorp was notified of Robinson's incompetency at the time he purchased the real estate, Citicorp made a claim under the policy, alleging that his lien on the real estate was unenforceable due to Robinson's mental incompetency. Subsequently, in an attempt to clear any questionable title and ensure the enforceability of Citicorp's lien, Stewart Title and Robinson's guardian arranged for a court-approved transfer of title by quitclaim deed to Stewart Title. Citicorp refused to accept Stewart Title's tender of the deed to Citicorp, saying that the tender was not a valid option under the policy, as the policy failed to specifically provide for this method of removing a defect in title, and alleging that it was entitled to $27,000 damages due to the unenforceability of the mortgage lien against Robinson.[2] The trial judge granted summary judgment in favor of Stewart Title, finding that in tendering a valid quitclaim deed to Citicorp, Stewart Title properly exercised its rights under the policy to "establish[ ] the lien of the insured mortgage."

Reversing the trial judge's grant of summary judgment to Stewart Title, the majority asserts that "[t]his case presents one disputed issue of fact—whether the guardian ratified Robinson's agreement [when it transferred title by quitclaim deed to Stewart Title]—but that issue is not material to the outcome [in light of the majority's construction of the insurance policy as prohibiting Stewart Title's attempt to cure the defect in the mortgage lien]."[3] The major-

---

1. Robinson's guardian was not a party to this transaction.

2. Throughout these proceedings, Citicorp has consistently maintained the position that Robinson's contract with Haggerty was void from its inception due to Robinson's incompetency, thereby rendering the mortgage lien unenforceable and incapable of being cured. As the majority points out, however, under Illinois law the contract was "voidable," meaning that the guardian of the incompetent person, once he gains knowledge of the transaction, may either enforce or reject the contract. Ill.Rev.Stat. Ch. 110½ ¶ 11a–22 (1985).

3. Despite purporting not to decide the issue, the majority opinion notes in *dicta* that:

"In addition, the trustee may, with court approval, 'execute and deliver any bill of sale, deed or other instrument.' Ill.Rev.Stat. ch. 110½, para. 11a–18(b) (1985). That action, distinct from ratification of the contract, was taken by the guardian here in order to transfer the property to Stewart Title. *We need not decide whether that action constituted a decision to affirm the validity of the mortgage, although we note that the guardian stated the contract was 'void,' and tendering the quitclaim deed was consistent with an intent to 'undo' rather than ratify the transaction.*" (Emphasis added).

Because I disagree with the majority's interpretation of the insurance contract, I would remand this case to the district court to hold a

ity goes on to note that the most difficult question in this case is "whether tendering the deed [to Citicorp] establish[ed] ... the lien of the insured mortgage, as insured ...," thus barring Stewart Title's liability. In its analysis, the majority properly recognizes that "[a]s a practical matter, the policy was intended to ensure that, if Citicorp needed to foreclose on the mortgage, it would be able to do so." Nevertheless, based on an assumption without factual basis in the record to support their speculative theory that the parties would not have intended to allow Stewart Title to correct a voidable mortgage, the majority rejects Stewart Title's contention that because Stewart Title cleared title to the real estate and tendered it to Citicorp (thus affording Citicorp the ability to foreclose on its mortgage), it "established ... the lien of the insured mortgage." Rather, for reasons unrelated to the interpretation of the language of the contract, the majority concludes that the policy was "irrevocably breached and the loss incurred as soon as Citicorp loaned Robinson the money."

The most obvious flaw in the court's reasoning is its failure to apply the traditional and accepted principles of insurance and contract law in analyzing the effect of paragraph seven of the policy. Paragraph seven provides:

"7. Limitation of Liability.

No claim shall arise or be maintainable under this policy (a) if the company after having received notice of the alleged defect, lien or encumbrance, insured against hereunder, by litigation or otherwise, *removes such defect, lien or encumbrance or establishes the title, or the lien of the insured mortgage*, as insured, within a reasonable time after receipt of such notice...."

(Emphasis added). As a general proposition, any ambiguities in an insurance policy should be resolved against the drafter of the instrument, the insurer, and in favor of the insured. *Heller v. Equitable Life As-*

*surance Society*, 833 F.2d 1253, 1256 (7th Cir.1987); *United States Fire Insurance Company v. Schnackenberg*, 88 Ill.2d 1, 4, 57 Ill.Dec. 840, 429 N.E.2d 1203 (1981). Secondly, insurance policy "[e]xceptions to liability must be expressed in unequivocal language so that it is reasonable to assume the insured understood and accepted these limitations." *Garman v. New York Life Insurance Company*, 501 F.Supp. 51, 52 (N.D.Ill.1980) (citing *Michigan Mutual Liability Company v. Hoover Brothers Inc.*, 96 Ill.App.2d 238, 237 N.E.2d 754 (1968)). However, "insurance policies must be read as a whole, and so far as possible, giving effect to every part of the policy." *Myers v. Merrimack Mutual Fire Insurance Company*, 788 F.2d 468, 471 (7th Cir.1986) (citing *Chicago Board Options Exchange Inc. v. Connecticut General Life Insurance Company*, 713 F.2d 254, 258 (7th Cir.1983)). And "a court must not 'bend the language of a contract to create an ambiguity where none exists.'" *Id.* (quoting *Chicago Board*, 713 F.2d at 258). As this court recently expressed in *National Fidelity Life Insurance Company v. Karaganis*, 811 F.2d 357, 361 (7th Cir.1987), "[u]nder Illinois law, an insurance policy that contains no ambiguity is to be construed according to the plain and ordinary meaning of its terms, just as would any other contract." *See also Sunstream Jet Express, Inc. v. Int'l Air Service Co.*, 734 F.2d 1258 (7th Cir.1984).

The majority, sidestepping the well-established principle that an unambiguous policy of insurance must be interpreted according to the plain and ordinary meaning of its terms, fails to point to any ambiguity in the terms of paragraph seven. *See, supra*, at 533. After failing to discover any ambiguity in the language of this provision of the contract, the court should have applied the ordinary, intended and accepted meaning of paragraph seven to the fact situation at hand. I am convinced that had it done so, the only logical conclu-

hearing on the issue of whether, under Illinois law, the guardian's participation in the transfer of title to Stewart Title, or any other action on the part of the guardian, amounted to a ratification of Robinson's contract with Haggerty.

If the trial court were to find that the guardian did in fact ratify the contract, Stewart Title would properly have cured the title defect under the policy, and judgment would issue in favor of Stewart Title.

sion to be drawn from paragraph seven is that in tendering a valid quitclaim deed to the subject real estate to Citicorp, Stewart Title merely exercised its rights under the policy to clear the title to the real estate and "establish [ ] the lien of the insured mortgage." Not only does this construction comport with the very language of paragraph seven, but it also fulfills the clear intent and purpose of the parties as expressed in the language of paragraph seven: namely, to guarantee Citicorp's ability to foreclose on its mortgage. When Stewart Title delivered a valid deed to the real estate to Citicorp, Stewart Title ensured that Citicorp retained the legal right it was entitled to under a legally enforceable mortgage (i.e., the right to foreclose). The majority itself recognizes that preserving Citicorp's right to foreclose in the event of default was the purpose of the policy as a whole; its failure to countenance this result manifests plain disregard for the policy as a whole.

The majority's conclusion appears to be based not on an interpretation of the insurance contract, but on the unsupported theory and supposition that (1) due to Robinson's incompetency, Stewart Title irrevocably breached the contract "as soon as Citicorp loaned Robinson the money," and (2) that this breach was so critical to the parties' agreement that the parties would not have intended to allow the use of paragraph seven to cure the title defect. But this is not what the clear and unambiguous language of the policy states; thus, it could not be what the parties intended. On its face, paragraph seven applies to any title defect capable of being cured (as the majority admits, the mortgage was not wholly void *ab initio* and was therefore capable of being cured; *see supra*, note 1), so as to afford the insured his full right to foreclose on the real estate. Because Stewart Title properly invoked its right under paragraph seven to take steps to ensure Citicorp's ability to foreclose on the mortgage, neither Citicorp nor the majority may rewrite the insurance policy to guarantee full payment of Robinson's debt to Citicorp. An analogous Pennsylvania case makes this precise point:

"The theory of the trial court, and the contention of the respondents as well, fails to take into account the contract in its entirety, and by thus disregarding the rights of the title company under the terms of the contract, assumes that the title company breached the contract as of the day the insurance policy was issued and that therefore and on said date was liable in damages for the difference between the value of the land with a marketable title and its value with an unmarketable title. Such a theory is obviously unsound for the reason that it forecloses the title company, if it elects so to do from exercising its right, according to the terms of the policy, to clear the title. *Manifestly, the insurance policy must be construed in its entirety, and it was as much the right of the insurance company to perform the contract according to its terms as it was the right of the assured to expect payment in the event of a failure upon the part of the title company so to do.*"

*Sala v. Security Title Insurance & Guaranty Company,* 81 P.2d 578, 583, 27 Cal. App.2d 693 (1938) (cited in 9 J.A. Appleman and J. Appleman, *Insurance Law & Practice,* § 5214 (1981)) (emphasis added).

The court's opinion today fails to set forth any reasoned explanation for its deviation from well-established principles governing the interpretation of insurance contracts, and will thus cause confusion for the trial courts in their attempt to apply consistent principles to contract interpretation problems. *See Sunstream Jet Express, Inc.,* 734 F.2d 1258. In doing so, the court has taken an ill-advised step of usurping the authority of the private contract, and through an act of judicial activism, in effect rewrites an otherwise clear and unambiguous policy of insurance. Because a proper and restrained application of traditional principles of insurance contract construction leads me to the conclusion that Stewart Title has the right under paragraph seven of the policy to attempt to cure the title defect in issue, I would remand to the district court for its consideration of the sole remaining issue: whether,

under Illinois law, the guardian's participation in the transfer of title to Stewart Title (or any other action on the part of the guardian) amounted to a ratification of Robinson's contract with Haggerty, thus clearing title to the subject real estate.

For the reasons stated above, I am forced to dissent.