**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF FARGO, NORTH DAKOTA, Plaintiff,**

and

**Resolution Trust Corporation, as Receiver for First Federal Savings and Loan Association of Fargo, North Dakota, Plaintiff–Intervenor–Appellant,**

v.

**TRANSAMERICA TITLE INSURANCE COMPANY, Defendant–Appellee.**

No. 92–1339.

United States Court of Appeals, Tenth Circuit.

March 16, 1994.

---

George W. Mueller (and Donald D. Farlow of Burns, Wall, Smith & Mueller, P.C., Denver, CO; and James M. Barker, Michael P. Condon, Michael E.F. Plave, Resolution Trust Corp., Litigation Section, Washington, DC, and Dorothy F. LeGrand, Resolution Trust Corp., Overland Park, KS, Of Counsel, with him on the brief), for plaintiff-intervenor-appellant.

Peter C. Dietze (Robyn W. Kube with him on the brief) of Dietze & Davis, P.C., Boulder, CO, for defendant-appellee.

Before KELLY and BARRETT, Circuit Judges, and ROGERS, District Judge.[†]

PAUL KELLY, Jr., Circuit Judge.

Resolution Trust Corporation (RTC) appeals from a judgment finding in favor of Transamerica Title Insurance Company (Transamerica) establishing that Transamerica did not breach a title insurance policy issued to RTC's predecessor-in-interest, First Federal Savings and Loan Association of Fargo, North Dakota (First Federal). We have jurisdiction under 28 U.S.C. § 1291 and affirm.

### Background

This dispute arose from a transaction involving a medical office building in La Plata County, Colorado. Wishing to construct a medical office building on a lot adjacent to the La Plata County Hospital, the La Plata County Hospital District (Hospital District) entered into a 99–year ground lease with a limited partnership known as La Plata County Medical Associates, Ltd. (Medical Associates). The rent for this lease was $1 per year. Medical Associates agreed to build an office building on the property which it would then lease to the Hospital District. Medical Associates constructed the building.

To permanently finance construction of the building, Medical Associates sought from Camelback Mortgage Corporation (Camelback) a loan for $2,943,000 secured by a promissory note and deed of trust on the ground lease. Camelback, a mortgage bro-

ker, interested First Federal in funding the transaction. On February 22, 1984, Camelback assigned the note to First Federal which then issued the proceeds of the loan to Medical Associates on March 15, 1984. On March 2, 1984, Camelback obtained a title commitment from Transamerica which sent copies to both Camelback and First Federal.

In February 1985, Medical Associates defaulted on the note, leading to First Federal's formal demand of accelerated payment of the note on September 26, 1985. During October 1985, another creditor of Medical Associates sued in Colorado state district court to collect on an unrelated note. First Federal intervened in that suit to protect its interest, claiming that Medical Associates was liable for the full amount of the $2.9 million note and that the loan was fraudulently induced.

On September 30, 1986, various Colorado taxpayers moved to intervene, alleging that the $1 per year ground lease violated Art. 11, § 2 of the Colorado Constitution as being a gift or donation from a quasi-political subdivision to a private entity, making the lease void ab initio. Three days later First Federal amended its pleadings to request, for the first time, foreclosure on the deed of trust and the ground lease. The taxpayers' motion to intervene was granted on October 30, 1986.

First Federal notified Transamerica on May 27, 1987, that if the ground lease was void it would consider this a title defect for which Transamerica would be liable. Transamerica responded to this notice on June 3, 1987, stating that it would look into the matter and would respond formally at a later date.

On October 30, 1987, the state district court ruled that the ground lease violated the Colorado Constitution and thus was void ab initio. On November 3, First Federal notified Transamerica of the court's ruling. Transamerica responded on December 31, stating that it was reserving all its rights to

† The Honorable Richard D. Rogers, Senior United States District Judge for the District of Kansas, sitting by designation.

decline any duty to defend or to pay any loss that might result from this matter.

On November 22, 1989, the state district court ordered the Hospital District to either pay $1.14 million to First Federal or convey title to the property to First Federal as equitable relief. As a result of a contempt order entered against the Hospital District, fee simple title to the land and building was conveyed to and accepted by First Federal on October 8, 1991. The RTC eventually sold the property for $775,000 while First Federal was in receivership.

On February 16, 1990, First Federal requested $2.94 million in damages and $145,000 in attorneys fees from Transamerica. Transamerica responded on April 20, 1990, reiterating its reservation of rights but also expressing willingness to negotiate the payment of reasonable attorney's fees which it eventually paid. There was also evidence that First Federal attorneys kept Transamerica abreast of the state court litigation and that Transamerica did not think it advantageous to substitute its own counsel for that of First Federal's.

The RTC, as receiver for First Federal, brought suit in federal district court for the District of Colorado against Transamerica for damages resulting from Transamerica's alleged breach of the title insurance policy. The RTC alleged (1) that Transamerica breached its duty to defend because it was First Federal's attorneys who cured the defect by obtaining title, and (2) that, even if Transamerica did not breach this duty, the defect was not cured within a reasonable time as per the policy. The district court found that Transamerica did not breach the title insurance policy because it, through First Federal's attorneys as its agents, cured the defect in title within a reasonable time.

## Discussion

■ In Colorado, the construction of an insurance policy is a question of law, *Ringsby Truck Lines, Inc. v. Insurance Co. of N.A.*, 496 P.2d 1069, 1071 (Colo.App.1972), which is therefore subject to de novo review. *See McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251, 254 (10th Cir.1993). District court findings of fact will not be disturbed unless clearly erroneous. *O'Connor v. R.F. Lafferty & Co.*, 965 F.2d 893, 901 (10th Cir.1992).

The RTC invites us to adopt the rationale of *Citicorp Sav. of Illinois v. Stewart Title Guar. Co.*, 840 F.2d 526 (7th Cir.1988). There, the Seventh Circuit held that where an insured interest is later determined to be void ab initio, the title insurance company was in breach of the policy upon its issuance. *Id.* at 529–30. The court also held that the insurer's tendering of title to the insured was not a sufficient substitute for monetary damages incurred by reason of falling property values during the time required of the insurance company to acquire legal title to the subject property. *Id.* at 530–31. We agree with the district court that this reasoning "ignores the nature of title insurance." *First Federal Sav. and Loan Ass'n v. Transamerica Title Ins. Co.*, 793 F.Supp. 265, 270 (D.Colo.1992).

■ Title insurance is merely a contract to indemnify the insured for any losses incurred as a result of later found defects in title. *See* 57 George J. Couch & Ronald A. Anderson, *Couch on Insurance* § 189 (2d ed., 1983 & 1993 Supp.); 9 John A. Appleman and Jean Appleman, *Insurance Law and Practice* § 5201 (1981 & Supp.1993); *Blackhawk Prod. Credit Assoc. v. Chicago Title Ins. Co.*, 144 Wis.2d 68, 423 N.W.2d 521, 524 (1988); *Demopoulos v. Title Ins. Co.*, 61 N.M. 254, 298 P.2d 938, 939 (1956). Title insurance does not insure the value of the subject property; it insures only that the title to such property is unencumbered by unknown liens, easements, and the like which might affect the property's value. *Blackhawk Prod.*, 423 N.W.2d at 524. In other words, a title insurance policy is not analogous to a warranty of title found in a deed which is breached, if at all, at the time it is made.

■ A title insurer is free to place reasonable limitations on an insured's ability to bring suit under a title insurance policy. *Behen v. Transamerica Title Ins. Co.*, 531 P.2d 641, 642–43 (Colo.App.1974). Generally, title insurance policies allow an insurer to cure an alleged defect within a reasonable time after receiving notice of such defect before an

insured may bring suit on the policy. 9 Appleman, *supra*, §§ 5213–5214. Thus, a title insurance policy is breached only *after* notice of an alleged defect in title is tendered to the insurer and the insurer fails to cure the defect or obtain title within a reasonable time thereafter.

■ Here, First Federal gave notice of the defect in the ground lease on November 3, 1987. First Federal obtained fee simple title to the property on October 8, 1991. The district court found that First Federal's attorneys were, in effect, furnished by Transamerica as evidenced by the frequent communications occurring between Transamerica and First Federal's attorneys and the fact that Transamerica paid all their fees. The district court also found that the title defect was cured by these attorneys within a reasonable time. Whether Transamerica fulfilled its obligation under the policy within a reasonable time is necessarily a question of fact. Because we cannot say, in view of the record evidence, that the district court was clearly erroneous, we will not disturb these findings.

■ Section 7 of the Transamerica title insurance policy issued to First Federal states: "No claim shall arise or be maintainable under this policy (a) if the Company ... removes such defect ... or establishes the title ... within a reasonable time." I App. 303. Because we find no ambiguity in this policy provision when the plain meaning of its terms are employed, we enforce the policy as written. *Ballow v. Phico Ins. Co.*, 1993 WL 467764 at *4 (Colo.1993) (en banc).

First Federal's attorneys, as agents of Transamerica, established title within a reasonable time. Therefore, Transamerica never breached the agreement. Absent a breach of the policy, no claim lies against Transamerica.

AFFIRMED.